**AIRCRAFT LODGE 703, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,**

v.

**CURTISS–WRIGHT CORPORATION, a corporation, Defendant.**

Civ. A. No. 1090–57.

United States District Court
D. New Jersey.

Jan. 22, 1959.

Bracken & Walsh, Newark, N. J., by John J. Bracken, Newark, N. J., for plaintiff.

Toner, Crowley, Woelper & Vanderbilt, Newark, N. J., by Herman D. Michels, Newark, N. J., for defendant; Breed, Abbott & Morgan, New York City, by Robert Knapp, Jr., New York City, of counsel.

HARTSHORNE, District Judge.

Plaintiff Union files its complaint here against defendant Company to compel defendant Company to carry out specifically what it claims to be the terms of the lengthy collective bargaining agreement between the two, including a broad grievance procedure terminating in arbitration. The specific relief asked by the Union is that this Court compel the Company to carry out what the Union alleges to be the terms of an arbitral award, which the Company claims it has carried out. Thereupon the defendant Company filed its verified application for a stay of such proceedings pending arbitration. It alleged that, while it had complied with the above arbitral award, the Union was dissatisfied with the Company's action in compliance with such award. Further, that this thus constituted a grievance to the Union, which therefore should in turn, according to the terms of the collective bargaining contract, be proceeded with by the Union, the dissatisfied party, under the grievance procedure which terminated in arbitration. Thus, the issue before this Court is whether the legality of the Company's action should be decided by this Court or by arbitration under the collective bargaining agreement between the parties to this suit, or as stated in the pretrial order, "the question to be decided by the Court primarily is whether the Court or an arbitrator is to pass on the legality of the new Code 4142 sought to be set up by Curtiss-Wright after the award of the arbitrator Gellhorn." The pretrial order continues:

"Thus, if the decision of this case is that this power lies in the Court, it will proceed to decide the legality of such new code. If, on the contrary, the decision is that same is a matter for arbitration, further proceedings herein will be stayed pending such arbitration * * * subject to further consideration by plaintiff [which did not occur] the

parties agree that the Federal Arbitration Act controls, not the State act." [Brackets this Court's.]

This agreement as to the applicability of the Federal Arbitration Act, 9 U.S. C.A. § 1 et seq., in any event, would appear correct. Textile Workers Union of America v. Lincoln Mills, 1956, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Tenney Engineering, Inc. v. United Electrical R & M Workers, 3 Cir., 1953, 207 F.2d 450;[1] Signal-Stat Corp. v. Local 475, etc., 2 Cir., 1956, 235 F.2d 298. The question still remains whether this particular litigation should be stayed pending arbitration under the circumstances in this case.

We turn to the facts, completely comprised in a stipulation of facts filed with the Court, with affidavits and exhibits incorporated. Since the pertinent facts are set forth, as above, substantially without dispute, leaving subject to dispute essentially only inferences therefrom and issues of law, this Court feels justified in acceding to this joint request of counsel to proceed upon the basis of such stipulation, despite Sims v. Greene, 3 Cir., 1947, 161 F.2d 87. The stipulated facts show that before the inception of the present collective bargaining agreement, itself stipulated in evidence, a job classification was established by the parties for Welder-Service, known as Code #4133, and rated for payment in labor grade 3 under the preceding collective bargaining agreement. The employees so classified were assigned to work in three departments of the Company's plant at Caldwell, New Jersey (Departments 038, 071 and 085). Later, because of an alleged change in certain methods of work, the Union claimed that such job code was not properly classified for rate of pay, and otherwise, and upon the failure of the parties to agree in that regard, the dispute was submitted to arbitration under the grievance procedure before this new code was made final, all in accordance with the collective

1. See, however, the emendation to Tenney, in a manner not material here, in the case of Bernhardt v. Polygraphic Co., 1955, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199.

bargaining agreement. The arbitrator selected was Professor Walter Gellhorn, of Columbia University School of Law, obviously an unusually capable arbitrator. In concluding his written report of April 24, 1957, upon the arbitration, the arbitrator states:

"I should remark, however, that all my attention has been devoted to developments in Department 338 [038]. During the hearing before me no suggestion was made that Welders-Service in other departments were doing any work that differed from what was being done when the Job Rating Standard for Code 4133 was agreed upon. Hence, while I do see merit in raising the point rating of the welders assigned to duty in Department 338 [038] so long as hot work is a major phase of the department's duties, I am not so clear in my mind that the whole classification deserves to be rerated.

"Award

"By virtue of the authority vested in me by the parties' arbitration agreement dated May 25, 1956, and having duly heard and considered the parties' proofs and arguments, I hereby award as follows:

"With respect to the occupation of Welder-Service, Code 4133, as now performed in Department 338 [038], the proper rating of Factor 4, Physical Effort, is in the 4th degree; and the proper rating of Factor 10, Working Conditions, is in the 5th degree. As to other factors under the Job Evaluation Plan, the ratings agreed upon on May 25, 1956, are confirmed. The changes in Factors 4 and 10 are warranted only because there has been a significant change in the work assigned to welders in Department 338 [038]."

The Company promptly issued a new job rating, Standard Code 4142, in Department 038, which apparently implemented what it believed was the substance of the arbitrator's award.

Prior to this the Union had done nothing about such award. But on the Union's receipt of notice of the issuance of this new job code, the Union disapproved this action of the Company in a letter dated May 29, 1957, in which it advised the Company that it considered this new code to be a "legal nullity". Thereupon the Company twice wrote the arbitrator asking him to advise if it had acted in conformity with his award. To this the arbitrator replied that he considered his power had ceased with the rendition of the award, and that he felt he could not further expound on his award unless requested to do so by both parties jointly. Upon receipt of this letter, the Company, on August 22, 1957, wrote the Union requesting it to join the Company in asking the arbitrator for a further ruling on the matter. By letter dated August 29, 1957, the Union refused to do so, saying:

"You misunderstand the whole nature of the situation. Under our contract Professor Gellhorn's power in that arbitration was limited to deciding whether the code in question was sufficiently highly rated or whether it should receive additional points. He decided it should receive additional points. In his opinion, by way of dicta, he appeared to want the additional points to apply only in department 38 and not to other departments where the code is used. But it was beyond his power, either under the contract or under the submission, to divide the code between departments with more points and departments with fewer points. You therefore had no right to follow his dicta in violation, both of the submission and of the contract, by limiting the up rate to one department. Our re-submission of the matter to Professor Gellhorn might produce further light on what he meant, but it still cannot give you that right. Only a re-negotiation of the contract can give you that right."

Despite the existence of the grievance procedure, terminating in arbitration un-

der the collective bargaining agreement, and its ready remedy thereunder, the Union thereupon filed the complaint herein. The Company promptly thereafter obtained from this Court an order to show cause, under the terms of the Federal Arbitration Act, Section 3, supra, staying the trial of this action pending arbitration to be had in accordance with the terms of the collective bargaining agreement.

Of course, the ultimate issue between the parties is the right of the Company to issue this new job code classification, in apparent accord with the arbitral award. But the sole issue now before this Court is whether the above issue on the merits is to be decided now by this Court, or by the grievance and arbitration procedure provided in the collective bargaining agreement. In paragraph 116 of this contract are the provisions for the classification of jobs. These require that if the Union disagrees with the Company's classification, same will constitute a "grievance." The grievance procedure to be followed by the parties, under such circumstances, is set forth in paragraphs 29 through 39, the last step being arbitration. Paragraph 29 provides:

"All grievances and other disputes arising out of the terms of this agreement shall be dealt with in accordance with the following grievance procedure:  *  *  *"

Clearly this new code set up by the Company under the arbitral award constitutes as to the Union a grievance, as shown by its definite opposition thereto. Same is also obviously a "dispute arising out of the terms of this agreement." Thus the parties have agreed to adjust this grievance by the grievance procedure set up under their collective bargaining agreement, with arbitration as its last step.

However, plaintiff Union claims, for several reasons, that this normal procedure is here inapplicable. It contends, first, that under the common-law rule as to arbitration, the contract as to arbitration must expressly make arbitration a condition precedent to a court action, in order to prevent the court from first deciding the question, despite the agreement of the parties to arbitrate. While this was the old State law in New Jersey, Anderson v. Odd Fellows, 86 N.J.L. 271, 90 A. 1007 (E. & A. 1914); Sonotone Corp. v. Hayes, 4 N.J.Super. 326, 67 A. 2d 184 (App.Div.1949), cf. Rosenthal v. Berman, 14 N.J.Super. 348, 82 A.2d 455 (App.Div.1951), this New Jersey law is here inapplicable. This is so not only by agreement of the parties, as seen above, but on the merits. If we consider the proceedings here to be one under Section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. § 185(a), to which the complaint first alludes, the words of our highest court in Lincoln Mills, supra, are controlling. Here the Court said [353 U.S. 488, 77 S.Ct. 914]:

"Other courts—the overwhelming number of them—hold that § 301(a) is more than jurisdictional [citing cases]—that it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements. Perhaps the leading decision representing that point of view is the one rendered by Judge Wyzanski in Textile Workers Union of America v. American Thread Co., D.C., 113 F. Supp. 137. That is our construction of § 301(a), which means that the agreement to arbitrate grievance disputes, contained in this collective bargaining agreement, should be specifically enforced.

"  *  *  *  Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.

"*  *  * It seems, therefore, clear to us that Congress adopted a policy which placed sanctions behind agreements to arbitrate grievance disputes [citing cases], by implication rejecting the common-law rule, discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582, against enforcement of executory agreements to arbitrate [citing cases]. We would undercut the Act and defeat its policy if we read § 301 narrowly as only conferring jurisdiction over labor organizations.

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."

█ This "common-law rule" discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 276, 68 L.Ed. 582, against enforcement of "executory agreements to arbitrate" is the very common-law rule on which the plaintiff Union here relies. Hence the provisions of the Federal Arbitration Act apply. This Act itself provides that "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement * * *". Moreover, many other cases than Lincoln Mills, supra, join with our highest court in decrying the old reluctance of the courts to enforce arbitral agreements, and call attention to both a judicial and "a congressional policy to encourage and enforce labor arbitration in industries affecting commerce." See cases cited by Lincoln Mills, supra, 353 U.S. at page 460, 77 S.Ct. at page 920. Thus, this first objection by the plaintiff Union is ill-founded.

█ The plaintiff Union further contends that it allowed the time to pass during which, under the contract, a grievance procedure should have been pursued, so that it cannot now ask that the dispute be arbitrated. This is indeed a surprising contention. It amounts to saying that one, who has failed to avail himself of a remedy, can now obtain a different remedy, which he could not have obtained, had he acted as he should. To agree with such a contention would simply nullify the Federal doctrine that arbitration, when agreed upon, should be first resorted to. According to such a contention, all a party need do, would be to sleep on his rights, and then when he wakes up, ask a remedy, to which he would not have been entitled earlier. See River Brand Rice Mills v. Latrobe Brewing Co., 1953, 305 N.Y. 36, 110 N.E.2d 545. This claim is insubstantial.

█ The plaintiff Union further claims that the Company is in default, for not having insisted on arbitration itself, when it found that the plaintiff Union disputed the new code. The plaintiff Union there refers to the provisions of the Federal Arbitration Act, 9 U.S.C.A. § 3, that the right to a stay such as this may be had "providing the applicant for the stay is not in default in proceeding with such arbitration." But the above facts show that the setting up of the code by the Company obviously did not create a grievance so far as the Company was concerned, but a grievance insofar as the plaintiff Union was concerned. It is the plaintiff Union, therefore, the aggrieved party, who should have instigated the grievance procedure steps, which terminated in arbitration. Under the Union's argument, it is the defendant in a law suit who should sue plaintiff. Furthermore, in fact, as seen above, the Company was always willing to arbitrate, and repeatedly asked the Union to do so, but it was the Union who refused to proceed. As stated in Council of Western Electric Technical Employees National v. Western Electric, 2 Cir., 1956, 238 F.2d 892; quoting from Kulukundis Shipping Co., S/A v. Amtorg

Trading Corp., 2 Cir., 1942, 126 F.2d 978, 989, a person is in default in proceeding with arbitration only if he "when requested, has refused to go to arbitration, or * * * has refused to proceed with the hearing." Thus it is the Union, not the Company, which is in default. So here the Company, "the applicant for the stay is not in default."

Therefore, since it clearly appears on the Company's petition "for a stay of the trial of this action pending arbitration", that the setting up of the new code by the Company, in its obvious attempt to implement the arbitral award, may constitute a grievance as to the Union, and that this grievance, under the collective bargaining agreement between the parties, calls in the first place for the adoption of grievance procedure and arbitration previous to suit, and further that the Company is not in default, the stay of the Union's complaint herein will be granted pending arbitration.

The Court, of course, notes the provision in the pretrial order that

"The question to be decided by the Court primarily is whether the Court or an arbitrator is to pass on the legality of the new Code 4142 sought to be set up by Curtiss-Wright after the award of the arbitrator, Gellhorn. Thus, if the decision of this question is that this power lies in the Court, it will proceed to decide the legality of such new code. If, on the contrary, the decision is that same is a matter for arbitration, further proceedings herein will be stayed pending such arbitration, but Defendant Curtiss-Wright does not itself desire to proceed of its own motion with such arbitration or concede that arbitration is available to the plaintiff any longer."

But, while the Company may not itself desire to proceed with arbitration, or concede that same is available to the plaintiff, the Company's petition for a stay concludes with the express prayer "that the trial of this action be stayed pending arbitration", as the pretrial order itself states repeatedly. Of course, a party cannot ask the Court to engage in a moot controversy—ask for a stay pending arbitration, when it contends that arbitration is unavailable. Nor does the Company's brief contend that arbitration is unavailable. In fact, it says: "The Company has elected to have the matter determined by arbitration." Furthermore, the jurisdiction of this Court is here invoked to determine if "the issue involved in such suit or proceeding is referable to arbitration under such an agreement." The statute provides further that if such be the case, the Court *"shall* stay the trial of the action *until* such arbitration has been had * * *". [Italics this Court's.] Since it has already been found that the issue involved herein is referable to arbitration, the Union's grievance as to the setting up of the new code by the Company should be promptly referred to arbitration, as the Federal Arbitration Act requires.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by F.R.Civ. P. 52, 28 U.S.C.A.

An order may be entered accordingly.