**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL NO. 776**

v.

**STANDARD MOTOR FREIGHT, INC.**

**Civ. A. No. 8670.**

United States District Court
M. D. Pennsylvania.

Nov. 3, 1966.

Sidney G. Handler, Handler & Gerber, Harrisburg, Pa., for plaintiff.

Herbert Burstein, New York City, Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., for defendant.

## MEMORANDUM

FOLLMER, District Judge.

This matter is before the Court on Motions for Summary Judgment filed by both plaintiff and defendant, both of whom filed affidavits in support of their respective motions.

This is a labor dispute involving pay shortages, clarification of a prior award and a discharge case.

Plaintiff seeks an order directing defendant to proceed with arbitration of the said grievances in the manner provided in a Collective Bargaining Agreement effective April 1, 1961.

The Complaint alleges that during the term of the said Agreement, Melvin Pollum, John A. Kress, William Null and Richard Weyant were employed by defendant-employer, were represented by the Union and were covered by the Collective Bargaining Agreement above referred to.

The said Agreement, at Article 7, relating to the Grievance Procedure, provides as follows:

"The Union and the Company agree that there shall be no strike, lockout, tieup or legal proceeding without first using all possible means of settlement as provided for in this Agreement of any controversy which might arise. In the event of any grievance, complaint, or dispute on the part of an employee it shall be handled or processed in the following manner:

"Section 1. The employee shall report the alleged grievance or dispute to his shop steward or committeeman in writing within forty-eight (48) hours from the time of occurrence of the alleged grievance or dispute or the grievance shall be void and receive no further consideration by either party to this Agreement. The steward or committeeman shall attempt to adjust the problem with the Company within forty-eight (48) hours from the time the grievance or dispute is presented to him by the employee.

"Section 2. Failing to agree, the shop steward shall report the problem to the Union, who shall state the Union's position in writing to the Company and attempt to adjust the same with the Company within five (5) days.

"Section 3. If both parties cannot resolve the dispute as set forth in Section 2 above, either party may reduce the complaint in writing, furnishing copies of same to the other party, with the request that the matter be heard by the joint grievance committee to be comprised of a minimum of two (2) employer representatives to be selected from among those companies which are signatory to this Agreement, and two (2) authorized representatives of the Union. Such committee shall meet at a time and place agreed upon by the committee, and unless excused by the committee, the complaining party and the employ-

er involved must appear before such committee under penalty of default. Any complaint not filed in writing as provided for above shall be considered null and void. The decision of the committee shall be final and binding on all parties. In the event of a deadlock, the matter will be resolved in accordance with the arbitration provisions established under the contract. Failure on the part of the committee to designate a meeting time and place within a reasonable period of time shall be the basis for any party to such grievance in which there is continuing liability, to waive the grievance committee hearing and permit the matter to go directly to arbitration.

"Section 4. If both parties cannot resolve the dispute as set forth in Section 3 above, either party may request Arbitration of the Dispute by so advising the other party in writing within five (5) days after the completion of Section 3 above. Upon such request, each side shall nominate arbitrators within five (5) days. If the two parties cannot agree upon an arbitrator within five (5) days of nomination, the American Arbitration Association shall be requested by either party to name the neutral arbitrator. All arbitration expense shall be shared equally by the parties. Each party agrees to accept and abide by any decision or award made by an Arbitrator or Arbitration Board. The Arbitrator or Board of Arbitration shall have the right to interpret, apply or determine compliance with the provisions of only this Agreement, but shall not have the right nor authority to add to, delete from or alter in any way the provisions of this Agreement.

"Section 5. While a problem or dispute is being processed through the Grievance Procedure, the work of the employees at the Relay operation or on the road or at terminal or at another work place shall not be hindered, restricted or interfered with in any way by either party, Union or Company. Adherence to and compliance with the Grievance Procedure shall not jeopardize their position in any subsequent step of the Grievance Procedure.

"Section 6. The Company and the Union agree that this Grievance Procedure shall be available to the Companies on the same terms and conditions as available to the Union Members."

On August 4, 1964, the Union, pursuant to Section 3 of Article 7 of the Agreement quoted above, filed a Complaint with defendant-employer on behalf of the said Pollum, Kress, Null and Weyant, and requested a hearing by the Joint Area Grievance Committee in accordance with said Section 3, Article 7, and then enumerated the claims of the said four employees. On the said date, the Union filed a complaint in writing on behalf of said Kress, claiming that he was entitled to reinstatement and reimbursement for lost pay because of the termination of his employment by defendant on September 25, 1963. On the same date, the Union filed a complaint in writing for the purpose of obtaining a clarification of a decision of the Joint Grievance Committee entered January 25, 1964, on claim of said Pollum. On the request of the Union, the Company agreed that the Joint Board be reconvened, which was done. The matter was resubmitted, new evidence was heard and the award was reconsidered and clarified. The plaintiff has advised that it is not pressing this clarification (Pollum) grievance.

Defendant has since agreed to arbitrate the reinstatement and reimbursement for back pay of Kress, but has refused to arbitrate the matters set forth in Paragraph (7) of the Complaint. Defendant answers by claiming that the grievances complained of are not arbitrable within the meaning of the Collective Bargaining Agreement and that they have been waived, released, abandoned and discharged by the said claimants and as a consequence thereof arbitration involving the said claims is barred and foreclosed; that the alleged matters sought to be arbitrated are beyond the scope of the Agreement and that

there is no authority under the said Agreement to obtain an interpretation of the award previously rendered by the arbitrator or arbitration panel.

As above indicated, on April 1, 1961, the parties hereto entered into a Collective Bargaining Agreement which provided in part as follows: "In the event of *any* grievance, complaint, or dispute on the part of an employee it shall be handled or processed in the following manner:", then follows the detailed procedure leading up to and culminating in arbitration. (Emphasis supplied.)

In United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567–569, 80 S.Ct. 1343, 1346, 4 L. Ed.2d 1403 (1960), the Court said:

" * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

\* \* \* \* \* \*

" * * * When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."

In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557–559, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), the Court said:

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Even under a contrary rule, a court could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. In view of the policies favoring arbitration and the parties' adoption of arbitration as the preferred means of settling disputes, such cases are likely to be rare indeed. \* \* \*

\* \* \* \* \* \*

" * * * Although a party may resist arbitration once a grievance has arisen, as does Wiley here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play."

See also Association of Westinghouse Sal. Emp. v. Westinghouse Electric Corp., 283 F.2d 93 (3d Cir. 1960).

In International Telephone and Telegraph Corporation v. Local 400, Professional, Technical and Salaried Div., etc., 286 F.2d 329, 330–331, (3d Cir. 1961), the Court stated:

" * * * the judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under their collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim

which on its face is one governed by the agreement. A court cannot pass on the merits of the claim. That is the arbitrator's function. * * *".

■ In view of the sweeping coverage of the contract, i. e., "any grievance, complaint or dispute," there can be no question but that plaintiff is making a claim which on its face is one governed by the Agreement.

The four employees filed an aggregate of four hundred one separate grievances involving pay shortages. Some of them were not timely filed in accordance with the Collective Bargaining Agreement.

In Radio Corp. of America v. Association of Professional Engineering Personnel, etc., 291 F.2d 105, 110 (3d Cir. 1961), the Court said:

"The one other point requiring comment is the contention of RCA that under the provisions of the contract, the present grievance is not timely. This court has ruled very recently that such a question is itself a matter of contract interpretation for decision by the arbitrator. * * *"

■ It is a fact that there were some claims that were timely filed and a number that were not. However, in view of the contract coverage, it seems perfectly obvious that this is a matter for determination by the arbitrators and not the court. Quoting again from Radio Corp. of America v. Association of Professional. Engineering Personnel, etc., supra, 291 F.2d at 110, "an 'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"

In addition, on March 26, 1964, a Joint Grievance Committee hearing was held with respect to certain of the pay shortages involved herein. The defendant's Vice President French appeared and made the following statement:

"Secondly, if and when this committee or this Union will furnish me with all the facts and details concerning these alleged claims, at that time I will view my position and take it up with the Union, and at the proper time I will agree to a proper committee to hear such grievances when I have facts and details, but I can't come in here to sit in a meeting about claims of which I know nothing."

It would seem that the defendant, speaking through its Vice President, did agree to arbitrate the pay shortage grievances after it was given details concerning the grievances and its agreement to arbitrate was in no way conditioned upon the timeliness of individual grievances. The defendant was supplied these details (see Handler affidavit) but thus far has refused to arbitrate.

Accordingly, plaintiff's Motion for Summary Judgment will be granted insofar as the same relates to the grievance relating to four hundred one separate claims.

■ Plaintiff has also requested the Court to consider the Complaint as seeking reconsideration and clarification of the Kress award. Kress was discharged and subsequently filed a grievance protesting his discharge and seeking reinstatement and back pay. This grievance was submitted to the arbitrators, who, by a majority vote, denied the grievance as not timely filed. I find no authority to remand a case to an arbitrator for interpretation or reconsideration except where there is a glaring ambiguity.

■ There is no provision for appellate review of an arbitration award contained in the Collective Bargaining Agreement herein; therefore, the award in issue must be considered a final award. Transport Workers Union of Philadelphia, A.F.L.-C.I.O., Local Number 234 v. Philadelphia Transportation Company, 228 F.Supp. 423 (E.D.Pa.1964).

The parties here agreed to a very broad arbitration coverage, the matter was arbitrated, and the parties are bound by the award of the arbitrators.

Motion of plaintiff for Summary Judgment to return the Kress award for re-

consideration and clarification will be denied.

Motion of defendant for Summary Judgment will be denied insofar as it requests that judgment be entered for the defendant because the said claims were not timely filed.

### ORDER

Now, November 3, 1966, in accordance with Memorandum filed this day, It is Ordered that the Motion of plaintiff for Summary Judgment is hereby granted insofar as the same relates to the grievance relating to the four hundred one separate claims and that said matter shall proceed to arbitration; and that the Motion of plaintiff for Summary Judgment is hereby denied insofar as it relates to the request to return the Kress award to the arbitrators for reconsideration and clarification.

It is further ordered that Motion of defendant for Summary Judgment is hereby denied insofar as it requests that judgment be entered for the defendant because the said claims were not timely filed.