**INTERNATIONAL UNION OF DISTRICT 50, UNITED MINE WORKERS OF AMERICA and its Local Union No. 15253, Plaintiffs,**

v.

**JAMES JULIAN, INC., Defendant.**
**Civ. No. 70–384.**

United States District Court,
M. D. Pennsylvania.
April 19, 1972.

Ira H. Weinstock, Handler, Gerber & Widmer, Harrisburg, Pa., for plaintiffs.

J. Thomas Menaker, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

This matter is before the court on a complaint of the union, an answer by the employer, and a motion by the plaintiff for a summary judgment.

The action arises under Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) giving this court jurisdiction; and venue is properly laid in the Middle District of Pennsylvania, the defendant being engaged in business in Scranton, Pennsylvania.

The complaint alleges in substance that the parties entered into a collective bargaining contract which was in effect during the time in which the events giving rise to this action occurred; that on September 17, 1968 one Anthony Milano, an employee of defendant company, was unjustly discharged; that pursuant to Article X of the collective bargaining contract entitled, "Grievances" an arbiter was appointed who held two hearings and rendered two "decisions and awards"; that the arbiter awarded grievant Milano the sum of $2500; that on February 23, 1970 the defendant filed with the arbiter a motion with supporting arguments seeking a review and reversal of the second award which motion was denied by the arbiter on February 25, 1970; that plaintiffs have continuously requested de-

fendant to comply with the award but that it has failed to do so. Plaintiff asks that defendant be directed to comply with the award and pay costs of the proceeding and attorney's fees.

Defendant's answer while it denies certain averments in the complaint, acknowledges that only two of its denials are material to the issues here involved; namely (1) it denies that Milano was unjustly discharged, and (2) it further denies that the first award of the arbiter awarded any damages to grievant and further avers that defendant did not agree "to reopening of said decision" and therefore denies "that the arbitrator had any jurisdiction, authority or power to reverse his decision denying back pay to the grievant."

We are faced first with the problem of what this court should do under the Labor-Management Relations Act of 1947 when, pursuant to that act, the parties have entered into a collective bargaining contract which provides fully and adequately for the arbitration of grievances [1] and the grievance here involved was duly submitted to arbitration. The second problem concerns the propriety of granting the motion for summary judgment when defendant contends that by its defense it has raised "genuine issues as to material facts."

We begin with § 301 of the Labor-Management Relations Act of 1947 which provides, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a).

In Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) the Supreme Court in an action by a union to compel arbitration under a collective bargaining contract which provided for such arbitration, held that it was proper for a district court to decree specific performance of the agreement to arbitrate under § 301 of the act and that the substantive law to be applied is federal law but that state law if compatible with the purpose of § 301 might be resorted to in order to find the rule that will best effectuate the federal policy.

1. Article X of the collective bargaining agreement between the parties provides, in pertinent part, as follows:

"Sec. 1. Should differences arise as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise on the project, an earnest effort will be made to settle such differences, immediately in the following manner, during which time there shall be no suspensions, lockouts, interruptions, or impeding of work, concerted work stoppages, strikes or other interferences with efficient production and plant maintenance.

"First: Between the aggrieved party who may be accompanied by the Job Steward if the employee desires his presence, and his supervising foreman.

"Second: Through the Job Steward and the Job Superintendent.

"Third: Through representatives of the Union and representatives of the Company.

"Fourth:"

(If the first three attempts to settle the grievance fail then the Chairman of the Bargaining Committee of the company and the Chairman of the Negotiating Committee of the union shall attempt to resolve the matter.)

"Fifth: If such meeting shall fail to settle the grievance, or if no such meeting is called, either party, with or without the consent of the other, but only after serving 72 hours written notice to the other, may request the Federal Mediation and Conciliation Service to appoint an arbiter and if so requested by either party the Federal Mediation and Conciliation Service shall designate and appoint such arbiter. The decision of the arbiter shall be final and binding. The fees and expenses of the arbiter so selected shall be borne equally by the Company and the Union.

"Sec. 2. A decision reached at any stage of the proceedings above outlined shall be binding upon both parties hereto and shall not be subject to reopening by any other party except by mutual agreement."

This circuit, in Ass'n of Westinghouse etc. v. Westinghouse Elec. Corp., 210 F.2d 623, 625 (3 Cir., 1954), had held that § 301(a) is a grant of "federal-question jurisdiction and thus creates a federal, substantive right."

This brings us to the agreement in issue here. There is no dispute concerning its application to the facts of this case. Indeed, the dispute was referred by both parties to arbitration before a neutral arbiter who, thereafter, held two hearings at both of which the company and the union were represented and at which each presumably presented evidence. While the company contends in its memorandum that the second arbitration hearing was held to litigate a completely different issue raised by "another Anthony Milano grievance," its answer to the complaint does not raise this issue [2] and we are inclined to believe from a fair reading of the two opinions and awards of the arbiter that he was considering at both hearings the same general grievance.

The defendant's real contention seems to be that once having rendered an opinion and award the arbiter cannot thereafter hold another hearing and make a new award unless both parties agree to this procedure.

We do not believe that both parties needed to agree to the procedure followed here, but even if such agreement were necessary (and not found in the record); nevertheless, this court should not pass on the matter, but that question should have been (if it was not) raised before the arbiter.

It will be noted that the grievance section of the collective bargaining agreement provides, in part, in Sec. 1 of Article X, that if "differences arise as to the *meaning and application* [3] of the provisions of . . . [the] Agreement, or . . . [if] differences arise about matters *not specifically mentioned* in . . . [the] Agreement," arbitration should be employed if other specific procedures have failed.

In United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960) and the two related cases (United Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. at 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424), the Supreme Court established the principle governing the role of the courts where the parties have provided in collective bargaining agreements for arbitration. At page 566, 80 S.Ct. at page 1346, the Court, after stating that the statute indicates that final adjustment by a method agreed upon by the parties to settle grievances is desirable, points out that "that policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given *full play*," and further, at page 567, 80 S.Ct at page, 1346, "[a]rbitration is a stabilizing influence only as it serves as a vehicle for handling *any and all* disputes that arise under the agreement . . . . The function of the court is very limited when the parties have agreed to submit *all questions*

---

2. Paragraph 9 of the complaint reads: "Two hearings were held before the Honorable Lawrence E. Seibel. On May 20, 1969 [correctly, June 18, 1969] and on February 16, 1970 the Honorable Lawrence E. Seibel entered his decisions and awards directing defendant to pay $2,500.00 to the grievant. The decisions and awards of the arbitrator are incorporated herein by this reference and attached hereto as Exhibit 'B'."
    Paragraph 9 of the answer reads: "Admitted in part. It is denied that Arbitrator Seibel's award of 18 June 1969 (Ex-

hibit B of Complaint) awarded any money damages or back pay to the grievant, nor did Defendant ever agree to a reopening of said decision under Article X, Section 2, of the collective bargaining agreement (Paragraph 5 of the Complaint). Therefore, it is denied that the arbitrator had any jurisdiction, authority or power to reverse his decision denying back pay to the grievant."

3. Emphasis ours throughout unless otherwise indicated.

of contract interpretation to the arbitrator . . . . In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment *and all that it connotes* that was bargained for."

Our own circuit, in Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3 Cir., 1969), in construing this field of the law said, at page 1125, quoting from United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, " '[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' "

And in reviewing cases decided since the Enterprise case which had held that so long as the arbitrator's decision drew its "essence" from the collective bargaining agreement, it should not be disturbed by the courts, Judge Aldisert pointed out, at 1126, that:

"Each case seems to have fashioned its own standard, and among those variously employed have been: the reviewing court should not disturb the award so long as the interpretation was not arbitrary, or 'even though the award permits the inference that the arbitrator may have exceeded his authority', or merely because it believes that sound legal principles were not applied; the court should interfere 'where the arbitrator clearly went beyond the scope of the submission', or where 'the authority to make * * * award cannot be found or legitimately assumed from the terms of the arbitration agreement', or if the arbitrator made a determination not required for the resolution of the dispute.

"Three decisions suggest no review whatsoever of the arbitrator's interpretations: construction and interpretation is not for the reviewing court;

there should be no review on the merits at all; review is confined to the question of whether the union agreed to arbitrate or give arbitrator power to make the award." (Footnote citations omitted)

It was suggested that here we are concerned with a procedural dispute rather than a substantive one and that the rule governing the role of the court is different in such a case, but this circuit, in Int'l Tel. & Tel. Corp. v. Local 400, etc., 286 F.2d 329 (3 Cir., 1960), has indicated that this is not so. And, in Int'l Ass'n of Machinists v. Hayes Corp., 296 F.2d 238 (1961), the Fifth Circuit has similarly held. Then, in John Wiley & Sons v. Livingston, 376 U. S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court held that when it is determined that the parties were obligated to submit the subject matter of a dispute to arbitration, "procedural" matters which grew out of the dispute should be left to the arbitrator. And, at page 559, at page 919 of 84 S. Ct., the Court said: "Although a party may resist arbitration once a grievance has arisen . . . we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *See also,* Deaton Truck Line, Inc. v. Local Union 612, Etc., 314 F.2d 418 (5th Cir. 1962).

Since we view the second hearing and the subsequent opinion and award as an integral part of the first, no specific agreement of both parties was necessary before the arbiter could act as he did. But, assuming that such agreement was necessary, we find that such agreement was given by the company by its counsel's letter to the counsel for plaintiff dated September 16, 1969.[4] Additionally, we find from

4. The letter read in part, "If you wish to invoke the arbitration clause in the union contract, we have no objection to requesting that Arbitrator Seibel be assigned to the case." (Although the record nowhere accurately reflects the date of the second hearing, we have been advised that it was held on November 10, 1969, about two months after the letter was written)

**508**

Paragraph 10 of the complaint and admitted in the answer, that defendant sought from the arbiter a reversal of the second opinion and award but was unsuccessful.

Defendant contends, as we have seen, that it has raised genuine issues as to material facts and consequently summary judgment is not appropriate. We disagree. It is true, as defendant maintains, that in Paragraph 6 of the complaint it is alleged that grievant was "unjustly discharged" and defendant denies this allegation in his answer. It is also true, as defendant maintains, that Paragraph 9 of the complaint seems to allege that *both* decisions and awards directed defendant to pay $2500 to the grievant when, in fact, the first decision and award did not, but in each of these instances the complaint is obviously incorrect as indicated by the decisions and awards which specifically show that grievant was not unjustly discharged and that in the first decision and award he was not awarded any back pay or damages. But no genuine issue as to any material fact is thus raised. It is not uncommon that the formal pleadings appear to raise such an issue when in fact none is really raised. 6 J. Moore, Federal Practice § 56.04[1], at 2057, where the text also quotes Justice Cardozo as having said: " 'The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial so that only the latter may subject a suitor to the burden of a trial.' "

 The two opinions and awards are exhibits to the complaint and thus part of the formal pleadings and the court may consider them in determining if a genuine issue of material fact exists, 6 J. Moore, Federal Practice § 56.04 [1], at 2060.

The other matters raised by the pleadings are either not material or raise only conclusions of law which we need not here consider.

We find that summary judgment in favor of plaintiff is proper and will be granted and an appropriate order will issue.

Plaintiff also seeks attorney's fees and costs, but these will be denied. It is undoubtedly true that a federal district court in a proper case may award attorney's fees and costs against a party who, without justification, refuses to abide by an arbiter's award, Local No. 149, I.U.U.A.A. and A. & A.I.W. v. American Brake Shoe Co., 298 F.2d 212 (4th Cir. 1962); Int'l Union of Dist. 50 U.M. W. v. Bowman Transp., Inc., 421 F.2d 934 (5th Cir. 1970); United Steelworkers v. Butler Mfg. Co., 439 F.2d 1110 (8th Cir. 1971), but this is not such a case, *see*, American Brake Shoe case, *supra.*