UNITED STEELWORKERS OF AMERI-
CA, AFL–CIO–CLC and Local 3125,
United Steelworkers of America, Plain-
tiffs,

v.

INTERPACE CORPORATION, SHE-
NANGO CHINA DIVISION,
Defendant.

Civ. A. No. CA 77–1070.

United States District Court,
W. D. Pennsylvania.

March 20, 1978.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., for plaintiffs.

Howard G. Estock, New York City, and Richard Catalano, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

The issue before the Court is whether an arbitration award in a contract interpretation dispute requires this Court to enforce it by ordering wage payments to the grievants, to remand the case to the arbitrator for clarification on the issue of wage payments, or to dismiss the action on grounds that the dispute between the Union and the Company presents a new issue that should be resolved through the grievance procedure outlined in their Collective Bargaining Agreement.

### I.

This dispute arose in August 1975, when the Defendant-Employer, Interpace Corporation (Company), without notice to the Plaintiff-Union, Local 3125 of the United Steelworkers of America (Union), instituted an incentive wage rate for those employees operating its English Roller Machine (Machine). This reduced the hourly wage rate paid to the Machine Operators, Pascarella and Micco, who, in turn, filed the following grievance (Exhibit B to Complaint):

"About eight years ago the English Roller Tool (Jiggering Machine) was put into operation. Mr. Pascarella a hand jigger operator replaced by the English Roller Tool was paid average rate up to 8–25–75. On 8–25–75 an Incentive Plan became effective. The plan did not earn for Mr. Pascarella and presently does not earn for Mr. Micco the average straight time hourly earnings of prior six months period prior to the awarding of the job."

They based their claim for relief on Article XIX, Section 2 of the March 1974 Collective Bargaining Agreement, which both the Union and the Company concede was in force at the time (Complaint ¶ 5, Answer ¶ 1), which states:

"In the case of employees manning future mechanized operations whose average straight time hourly earnings exceed the day rate and/or incentive earnings for the new job, their average straight time hourly earnings for the six month period prior to the awarding of the job shall be paid. In case employees have been on their job less than six months, the time on their job shall be used to calculate the average hourly earnings.

In the case of machine operations which were established prior to November 9, 1956, the established system of payment presently in effect shall continue to be used."

Unable to resolve the grievance, the parties submitted the matter to an arbitrator, Dr. John W. May (Arbitrator), who sustained the grievance on grounds that the Company violated the contract by failing to notify the Union of the new incentive rate, and that installation of the Machine constituted a mechanization of an old job under Article XIX, Section 2. Under this ruling, the wage rate applicable was the "average straight time hourly earnings" for the six

months preceding the "awarding" of their operator jobs. The Arbitrator, however, did not compute the amount of back-pay due the grievants under the award, and the Company and Union disagreed on when the "awarding" of the job for purposes of determining the backpay took place. The Company maintained that on the basis of past practice and a 1959 Agreement, the average earnings should be based on the six months immediately before the date when each employee first worked on the Machine (Budd Affidavit, Exhibit EE; Mannarino September 16, 1977 Affidavit, Exhibit 1). The Union contended that Pascarella's average should be computed for the six months preceding the initiation of the incentive plan and that Micco's average should be derived from the six months prior to his bid and *permanent* assignment to the Machine in April of 1976 (Budd Affidavit, Exhibit DD). The Arbitrator responded to requests that he clarify his award in a letter on July 17, 1977, which reads, in part, as follows:

"The request of the parties in an extension of the award rendered on 22 December 1976 and was not a part of the issue at the time of the hearing. It is not within the authority of the Arbitrator to compute the retroactivity as that is governed by the Contract and Supplemental Agreements.

\*      \*      \*      \*      \*      \*

Now Company Exhibit 1 and Company Exhibit 2 have been incorporated in Article XIX and payment is computed on the employees average straight time hourly earnings for the six month period prior to the *awarding* of the job. Not on the basis of a temporary assignment or temporary transfer, but when he was *assigned* the job by bid or permanent transfer.

\*      \*      \*      \*      \*      \*

A transfer to an operation is not to be interpreted as temporary, filling in, etc., but when that became his vested job. Paragraph four then states once this hourly rate is computed, it stays fixed during all subsequent periods. Micco bid

in on the English Roller Tool in April 1976. His rate would then be computed for all time at the six month average straight time hourly earnings for the six months prior to his transfer in April 1976.

Thus, paragraph 4 Company Exhibit 2, dated February 16, 1959 states the rate is set on the assignment or bid and is then in place for all time subsequent thereto whether by bid or temporary assignment, but it does not state nor intend that if Micco worked the English Roller Tool in 1966 a couple days for the convenience of the Company that he is then forever subject to the 1966 rate.

\*      \*      \*      \*      \*      \*

The complaint exists on an issue outside the hearing. The computation of the earnings was not at issue, but rather a violation of Article XIX on which I ruled. The computation now becomes a new issue between the parties.

Again, Article III Section 5 is not applicable; computation is to be done under Article XIX Section 2. As to the existence of a past practice, I recall nothing on the fact of setting a rate the first time an employee mans a machine and then being set forever. However, Company Exhibit 2 can only be interpreted the rate is set at the time he is transferred to the operation as his particular job.

\*      \*      \*      \*      \*      \*

I regret the subsequent confusion, but I do insist a new issue has been raised by the parties." (Errors in original)

The Arbitrator also agreed to hold September 27, 1977 open for another hearing; but the Company's counsel, Thomas M. Budd, informed John F. Schano of the American Arbitration Association (AAA) that the Arbitrator had been asked only to clarify his award and that any disagreement on how to compute back-pay was a new issue to be dealt with by filing a new grievance (Mannarino Affidavit, September 16, 1977, Exhibit 4). The Union's representative, Clarence Mannarino also wrote to Schano asking to go ahead with the September 27th hearing (Mannarino Affidavit, September

16, 1977, Exhibit 4). The Company responded by asking Schano to declare the Arbitrator functus officio (Mannarino Affidavit, Exhibit 4), which he did in a letter dated August 4, 1977, stating (Defendant's Answer, Exhibit 3):

"In the absence of the agreement of the Company for Arbitrator May to participate further in the captioned arbitration, the Arbitration Association must regard this matter as closed and the arbitrator as without further authority in this case."

On September 16, 1977, the Union filed the present action to enforce the Arbitrator's Award and to recover interest on the unpaid wages, attorney's fees and costs. The Union has also filed a Motion in the Alternative for Summary Judgment Enforcing Arbitration Award or for Remand for Arbitral Calculation of Amount of Wages Due. The Company has made a Motion for Summary Judgment in its favor, which will be denied, and a Motion for Attorney's Fees and Costs. The Union's Motion for Remand will be granted; all requests for attorney's fees and costs will be denied.

## II.

■ One of the central tenets of national labor law and policy is that private arbitration is the favored method of settling grievances between organized workers and their employers; a court cannot overrule the decision of an arbitrator simply because its interpretation of the collective bargaining agreement differs from his. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Gateway Coal Co. v. United Mineworkers of America,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Napa Pittsburgh, Inc. v. Automotive Chauffeurs, Local 926,* 502 F.2d 321 (3rd Cir.) (en banc), *cert. den.* 419 U.S. 1049, 95 S.Ct. 625, 42

L.Ed.2d 644 (1974). Absent fraud, bias or misconduct, an arbitrator's award that "draws its essence from the collective bargaining agreement" must be allowed to stand. Only when the award shows manifest disregard of the agreement, and is totally unsupported by principles of contract interpretation or the practices of the industry and the shop, can it be disturbed. *United Steelworkers v. Warrior & Gulf Navigation, supra; Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3rd Cir. 1969); *Keystone P. Spec. Co., Inc. v. Scranton P. P. and A. U. No. 119,* 386 F.Supp. 416 (M.D.Pa. 1974), *aff'd,* 3 Cir., 517 F.2d 1398 (1975).

■ In the instant case, the Union moves the Court to enforce the Award by ordering the Company to pay the Grievants back wages. An action for the enforcement of an arbitration award is proper under Section 301 of the National Labor Relations Act (29 U.S.C. § 185) providing that the award is final and binding under the collective bargaining agreement. *Drivers Union v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). The difficulty here, however, is that there is no basis for determining how much Pascarella and Micco are entitled to receive under Article XIX, Section 2 of the Contract because the question of when the "awarding" of their jobs on the Machine took place is not even discussed in the Award. Although the Arbitrator indicates his sympathy with the Union's interpretation of Article XIX, Section 2 in his July 17th letter, he insists that the parties raised an entirely new issue in their request for clarification. The Third Circuit implied in *Hart v. Overseas Nat. Airways, Inc.,* 541 F.2d 386 (1976), that a district court may calculate arbitral back pay awards when they can be "ministerially computed." But this Court has no authority to do so when the calculation would, in effect, impose its interpretation of the Collective Bargaining Agreement on the parties. Therefore, the Union's request that the Court order the Company to pay the Grievants a sum certain cannot be granted.

■ The Union, in the alternative, asks the Court to remand the case to the Arbi-

trator for hearing on the wages due the Grievants and to order the Company to appear at that hearing. We do have the power to resubmit a labor arbitration award to the arbitrator for clarification of a glaring or patent ambiguity. *LaVale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569 at 574 (3rd Cir. 1967) (dictum); *Local 719, American Bakery and C. Wrks. v. National Biscuit*, 378 F.2d 918 (3rd Cir. 1967); *International Bros. of Team., Etc. v. Standard Motor Frgt., Inc.*, 260 F.Supp. 269 (M.D.Pa. 1966) (dictum); *Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers of America, Local 15*, 242 F.Supp. 606 (D.N.J.1965); *Transport Workers Union of Phila., Local 234 v. Philadelphia Transportation Co.*, 228 F.Supp. 423 (E.D.Pa. 1964). The Company argues that the Arbitrator's Award cannot properly be deemed "ambiguous" since, as already noted, the issue of when Pascarella and Micco were awarded their jobs was not even discussed in the Award, and the Arbitrator's letter of July 17, 1977 indicates that he did not consider this element of the dispute. But underlying the rule that an ambiguous award can be resubmitted to an arbitrator is the policy in favor of clear, *final* awards that completely resolve the dispute originally submitted to him. We cannot order an arbitrator to make an award beyond the scope of the issues submitted to him; that, in itself, would be grounds for reversal of an award. *Ludwig Honold Mfg. v. Fletcher,* supra (dictum); *Textile Workers Union v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961); *Keystone P. Spec. Co., Inc. v. Scranton P. P. & A. U. No. 119, supra.* But we can require the Arbitrator in this case to make a complete award. In *LaVale Plaza v. Noonan, supra,* the Third Circuit Court of Appeals explained this principle in a case involving arbitration of a dispute over a construction contract as follows (378 F.2d at 573):

> "The principle that an award once rendered is final contains its own limitation, however, and it therefore has been recognized in common law arbitration that the arbitrator can correct a mistake which is apparent on the face of his award. Simi-

larly, *where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination.* In such a case the arbitrator is not exposed to any greater risk of impropriety than would normally exist during the pendency of the arbitration proceedings, a risk which is inherent in the submission of disputes to nonjudicial determination. The Pennsylvania courts therefore have recognized that an arbitrator may complete a common law arbitration if the award is not complete, even over the objection of one of the parties. Thus, in *Frederick v. Margwarth,* 221 Pa. 418, 70 A. 797, 18 L.R.A.,N.S., 1246 (1908), plaintiff sued on an award in his favor made by an arbitrator named in a building contract. The court sustained the defense that the award was invalid because it was not coextensive with the submission, since the arbitrator had failed to pass on a number of disputed matters that had been submitted to him. Thereupon the arbitrator, on notice to the parties, went forward with the completion of his award, on which the plaintiff brought a new action. The Supreme Court of Pennsylvania rejected the defense that the arbitrator's authority ended with the making of the first award. Mr. Justice Fell said: 'The rule undoubtedly is that, when an arbitrator has made and delivered his award, the special power conferred upon him ends. But an award must be final, complete, and coextensive with the terms of the submission. The arbitrator, through mistake, failed to consider and decide a part of the dispute submitted to him, and the award was invalid because incomplete. But the agreement was still in force, and it was competent for the arbitrator to finish his work by making a full and complete award. * * *' (221 Pa. at 420, 70 A. at 797). See also *William C. Hamilton & Son v. Hart,* 125 Pa. 142, 17 A. 226 (1889)." (Footnote omitted) (Emphasis added)

392

In a labor case involving arbitration, *International Assoc. of Machinists v. Crown Cork & Seal*, 300 F.2d 127 (1967), the Third Circuit Court of Appeals affirmed a District Court's order remanding an award to the arbitrator because he failed to make an express disposition on the issue of damages, which had been submitted to him.

■ The essence of the grievance in the instant case was that the Company was paying the operators *less* than they were entitled to under Article XIX. The Grievants were not interested only in an adjudication of the theoretical question of whether their jobs were "future mechanized operations", but in whether they should have received a higher wage rate. Once the Arbitrator decided Article XIX was applicable, the grievance could not be resolved without a determination of their average hourly rate and, therefore, of when the Grievants were awarded their jobs for purposes of Article XIX. To force the Grievants to invoke the time-consuming and burdensome grievance process again would be an injustice to them and would undermine the policy favoring speedy and inexpensive resolution of labor disputes. In light of the express terms of the grievance here, the Arbitrator is obligated to determine the "average straight time hourly earnings for the six months prior to the awarding of the job."

In arguing for summary judgment in its favor, the Company relies principally on the case of *International Ass'n of M. & A. Wkrs. v. Aerojet-General Corp.*, 263 F.Supp. 343 (C.D.Cal.1966). In that case, the grievance submitted to arbitration was that electronic technicians should have been assigned certain floor work that, instead, was given to "Electric Bench Assemblers" (EBAs), employees with a lower job rating. The arbitrator held the work had been improperly assigned, established a new job classification and pay rate for the work, and ordered the company to pay those EBAs who had already performed the work. Although both parties agreed that the award was not ambiguous, but clear and final, the company insisted that the determination of which EBAs were entitled to

pay under the new classification was a new matter to be resolved by a fresh invocation of the grievance machinery. The union argued that the award should either be enforced or remanded to the arbitrator for determination of which employees were covered by the award. In an action brought in the district court by the union to enforce the arbitrator's award, Judge Crary held that the award was not ambiguous and that the issue was a new one that required the union to file a new grievance.

In *Aircraft Lodge 703 v. Curtiss-Wright*, 169 F.Supp. 837 (D.N.J.1959), which is cited by the *Aerojet-General* Court, the arbitrator determined that a particular class of workers was not properly classified for rate of pay. To comply with the award, the company then established a new rate, but the union refused either to accept the new rate or to resubmit the question to the arbitrator, and, instead, filed a complaint in the district court to obtain enforcement of the award. The district court, however, held that the union's disagreement with the company's implementation of the award constituted a new grievance to be adjusted by the grievance procedure.

Both of these cases are distinguishable from the matter *sub judice*. Here, the question of when the jobs were awarded, which the Arbitrator calls a "new issue", was a necessary determination to resolve the original grievance. In both *Aerojet-General* and *Aircraft Lodge*, the new issues were created by the arbitrator's ruling, respectively, that a new job classification and a new pay rate were necessary. In neither case could the issue in dispute have been raised before the initial hearing and award, since each case involved disagreement about how to implement the award. Also see: *Hellman v. Program Printing, Inc.*, 400 F.Supp. 915 (S.D.N.Y.1975) (subsequent layoff of a reinstated grievant held to be a new issue requiring a new grievance); *Detroit & Midwest St. J. B. v. White Tower L. & C.*, 353 F.Supp. 168 (E.D.Mich.1973) (subsequent transfer of a reinstated grievant held to be a new grievance).

For the reasons stated above, the Union's Motion for Remand For Arbitral Calculation of Amount of Wages Due will be granted.

### III.

 Counsel fees may be awarded by district courts in arbitration enforcement cases if one of the parties, without justification, refuses to abide by an arbitrator's award. *Sheeder v. Eastern Express, Inc.,* 375 F.Supp. 655 (W.D.Pa.1974); *International U. of Dist. 50, U.M.W.A. v. James Julian, Inc.,* 341 F.Supp. 503 (M.D.Pa.1972). Considering that the Arbitration Award in this case was not self-executing and that the Arbitrator himself stated that the parties had raised a new issue, the Court does not believe that an award of costs and attorney's fees is appropriate. Therefore, all requests for costs and attorney's fees will be denied.

An appropriate Order will be entered.