**Hugh HART, Appellant,**

v.

**OVERSEAS NATIONAL AIRWAYS INC.**

**No. 75–2408.**

United States Court of Appeals, Third Circuit.

Argued June 8, 1976.

Decided Aug. 24, 1976.

J. Anthony Messina, Lawrence S. Coburn, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant.

Louis A. Mangone, Alan C. Drewsen, Breed, Abbott & Morgan, New York City, Paul Breen, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The plaintiff, Hugh Hart, brought this action in the district court against Overseas National Airways, Inc. (ONA) to enforce an arbitration award. Under the Award Hart's discharge from employment with ONA was held to be improper and the Award directed that he "be made whole for any and all wages, benefits and/or rights" to which he would have been entitled had he not been discharged. Both Hart and ONA moved for summary judgment. Despite its recognition that the Award "definitively states the discharge of plaintiff was without proper cause," the district court refused enforcement, holding the Award to be uncertain and indefinite and granted ONA's motion for summary judgment.

We reverse and remand to the district court with instructions for further proceedings.

## I.

Hugh Hart was employed by ONA as flight navigator. On May 2, 1970 Hart

served as navigator on Flight 980 which left New York for the Caribbean island of St. Maarten. As the aircraft approached its destination it was rerouted due to poor weather conditions. When the flight was finally cleared for landing on St. Maarten, the visibility was so poor that after four approaches which were unsuccessful, the flight captain attempted to land at the designated alternate airport at St. Thomas. However, the flight's fuel was sufficient for a flight time of only 4 hours and 34 minutes and 4 hours and 16 minutes had already elapsed since the flight's departure from New York.[1] After 4 hours and 35 minutes in flight, the aircraft crashed in the Caribbean killing twenty-three persons and injuring several others including Hart.[2]

After the crash, Hart and the other members of the cockpit crew were discharged from ONA's employ. Hart contested his discharge invoking the provisions of the collective bargaining agreement between ONA and Local 295, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Ultimately Hart's grievance came before the "Flight Navigators System Board of Adjustment" (SBA) established pursuant to Sec. 21 of the collective bargaining agreement and § 204, Title II of the Railway Labor Act, 45 U.S.C. § 184.[3] The SBA held that Hart had been discharged without proper notification under § 24 of the collective bargaining agreement,[4] but deadlocked on the question of whether Hart had been discharged for just cause. A neutral referee, Melvin A. Rosenbloom, was selected by the National Mediation Board to serve on a three-man panel with one representative of

the union and one representative of ONA to resolve this issue. The parties agreed that all disputed procedural and substantive issues would be decided solely by the referee. As a consequence an evidentiary hearing was held before Rosenbloom as referee and two members of the SBA in December, 1970 and the case was thereafter taken under advisement.

On June 23, 1972 Rosenbloom wrote to counsel for Local 295 and ONA setting forth reasons for the "extraordinary delay in . . . rendering a decision . . ." Rosenbloom stated that he was at that time revising the fourth draft of his opinion but nevertheless felt constrained to release his "Findings, Conclusions and Award," with the full text of his opinion to be furnished shortly.[5] The body of the letter then set forth Rosenbloom's "Findings, Conclusions, and Award":

## FINDINGS

Contrary to the theory of the Company, the evidence herein fails to establish the following concerning the conduct of Hugh Hart on May 2, 1970, in connection with his assignment as navigator on ALM Flight 980:

1. That his performance of his duties was below commonly accepted professional standards or contrary to Company requirements;

2. That he performed in a manner inconsistent with his training, scope of responsibilities or direct instructions from his superiors;

3. That the manner in which he performed his duties contributed to the

1. ONA contended that Hart had failed to keep a "Howgozit Chart" showing fuel consumption and failed to follow other safety procedures.

2. The factual background giving rise to the arbitration and hence to this action was derived from testimony taken before the System Board of Adjustment. Hart received workmen's compensation benefits until February 9, 1973.

3. Local 295, Hart and ONA agreed to bypass an appeal to the Executive Vice President of ONA and instead directly initiated proceedings be-

fore the SBA established pursuant to 45 U.S.C. § 184.

4. Section 24(B) requires that:

A Flight Navigator shall not be disciplined or dismissed without the precise charge or charges furnished him in writing.

5. Rosenbloom has never issued his opinion. His "Findings, Conclusions and Award" did not discuss the effect of ONA's violation of the Sec. 24 notice provision of the collective bargaining agreement.

aircraft reaching the condition of fuel exhaustion and therefore was a causative factor in the ditching of the aircraft;

4. That an oversight, omission or failure to perform a function which could reasonably have been expected of him under the circumstances prevailing at the time of the flight was responsible for the low fuel condition going undetected until it was too late to avoid the loss of the aircraft;

5. That an oversight, omission or failure to perform a function which could reasonably have been expected of him under the circumstances prevailing at the time of the flight was a factor in the various command decisions the results of which combined to make the ditching of the aircraft inevitable; and

6. That he was culpable of misconduct in the preparation of the cabin for ditching and in his actions after ditching.

## CONCLUSIONS

The Referee is unable to find on the basis of the record herein that the Company satisfied its burden of proving that good and sufficient cause existed for the discharge of Hugh Hart.

## AWARD

The discharge of Hugh Hart was without proper cause. His termination shall be set aside and stricken from his personal record and he should be made whole for any and all wages, benefits and/or rights to which he is or would have been enti-

tled had he not been wrongfully discharged.

Soon after the issuance of Rosenbloom's "Findings, Conclusions and Award," Local 295, as Hart's bargaining representative, demanded compliance from ONA.

On October 26, 1973, Hart, alleging that ONA had failed to comply with the award, filed a complaint in the United States District Court for the Eastern District of Pennsylvania against ONA seeking enforcement. Jurisdiction was alleged to exist under 28 U.S.C. §§ 1331 (federal question), 1337 (actions arising under federal statutes regulating commerce) and 45 U.S.C. § 153 (enforcement of awards under the Railway Labor Act).[6] The complaint alleged that Hart was entitled to be "made whole" in the amount of $82,610.00.[7]

Following discovery, Hart moved for summary judgment arguing that the award was valid and should be enforced. Hart's brief in support of his motion argued essentially that liability having been determined in his favor by the arbitrator, the district court should compute the damages under the award and enforce the award in that amount.

ONA also moved for summary judgment alleging: (1) that Rosenbloom's letter was ambiguous, vague and incomplete and was not a final award which could be enforced; (2) that ONA had complied with the award by allegedly making Hart "whole";[8] (3) that the referee had violated ONA's due process rights by refusing to admit certain hearsay testimony into evidence under an agreement made by the parties; and (4)

6. *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) holds that a suit to enforce an airline SBA award is a suit arising under the laws of the United States. Jurisdiction thus exists under both 28 U.S.C. §§ 1331 and 1337. *See* note 15 *infra* respecting 45 U.S.C. § 153.

7. Hart computed the amount which he claims as follows:

| | |
|---|---|
| Salary from 7/4/70–12/1/73 | $63,400.00 |
| Back pay adjustment | 350.00 |
| Overtime | 8,720.00 |
| Severance pay | 19,140.00 |
| Total | $91,610.00 |
| Minus severance pay deduction assuming receipt of salary for two years continuous employment to December 1, 1973 | 9,000.00 |
| Net amount due | $82,610.00 |

8. ONA argued that Hart's injuries, for which he received workmen's compensation would have prevented him from being reemployed as a nav-

that the referee's finding of wrongful discharge was arbitrary, capricious, wholly baseless and completely without merit.

The district court, concluding that the award was too incomplete to be enforced as a final award, denied Hart's motion for enforcement and granted ONA's motion for summary judgment. In so doing, the court stated:

> The Award clearly and definitively states the discharge of plaintiff was without proper cause. Also, the Award clearly sets forth that plaintiff is entitled to have his termination set aside and stricken from his personal record. However, plaintiff seeks to enforce the part of the Award dealing with damages, and it is this part of the Award which is uncertain and indefinite. This part of the Award states, 'he should be made whole for any and all wages, benefits and/or rights to which he is or would have been entitled had he not been wrongfully discharged.' This language is too vague to permit the Court to determine the intention of the neutral referee as to the extent and scope of damages, if any, to be recovered by plaintiff.

This appeal followed.[9]

## II.

We are not entirely clear as to the precise basis for the district court's order of October 9, 1975, for its opinion can be read in more than one way. At the outset of its opinion the district court stated:

> We deny plaintiff's motion and grant defendant's motion for summary judg-

ment because the attempted determination of the dispute by the neutral referee is not enforceable as it is ambiguous, incomplete and indefinite.

After setting forth the relevant facts, proceedings, and contentions of the parties, the district court then said:

> We decide that the Award is incomplete and too uncertain and indefinite to enforce, thus we need decide only the issues raised in the first category of defendant's contentions.[10]

At that point in its opinion, the district court then appeared to affirm the finding by the referee of a wrongful discharge but went on to say:

> However, plaintiff seeks to enforce the part of the Award dealing with damages, *and it is this part of the Award which is uncertain and indefinite.* (Emphasis added.)

The balance of the district court's opinion then focuses on the uncertainty as to the extent and scope of damages, if any, to be recovered by Hart, concluding:

> It is clear that disputed issues crucial to a final determination of this matter remain; consequently, the Award remains ambiguous, indefinite and incomplete, and thus not enforceable by this Court as a complete final award.

Hence, the district court's opinion could be read as either (a) affirming the referee on his finding of liability in favor of Hart, but rejecting the entire award because of the uncertainty of damages; or (b) affirm-

---

**9.** The district court did not discuss or decide the various other claims raised by ONA.

**10.** The "first category" of defendant's contentions to which the court here refers is found in a preceding paragraph of its opinion which reads:

> Defendant denies that it is liable to plaintiff and has set forth 10 affirmative defenses to this action. On analysis the defenses may be separated into three categories. *First, that the neutral referee's letter of June 23, 1973 is ambiguous, vague, incomplete and insufficient to be a final award enforceable by this*

*Court.* Second, that if the Award is considered sufficiently definite to be a final award, it should be set aside as arbitrary and capricious, obtained in violation of defendant's due process rights, and the result of improper conduct on the part of the neutral referee. Third, that even if the Award is enforceable, there is no amount due and owing to plaintiff.

The relevant "first category" is that portion which we have italicized. As indicated, *infra,* the district court having failed to reach the other contentions of the defendant, it is likewise inappropriate for us to consider them.

ing no part of the award because, as to liability, the district court admitted it had not reached the due process argument of the defendant, and as to damages the award was uncertain. In either event, the district court apparently believed that the award either had to be enforced or set aside, and as it could not enforce the award because of the indefiniteness of the damages, it was therefore compelled to set it aside.

While we agree with the district court that the damage portion of the award is too indefinite to be enforced in its present form, we have nevertheless concluded that the district court erred in granting summary judgment in favor of ONA and that a remand to the district court is required not only for clarification of its opinion but for those additional proceedings which we believe to be necessary to resolve the issues raised by the parties.

### III.

Referee Rosenbloom's "Award" provided the following remedies for Hart's wrongful discharge:

His termination shall be set aside and stricken from his personal record and he should be made whole for any and all wages, benefits and/or rights to which he is or would have been entitled had he not been wrongfully discharged.

Given the state of the record, we share the view of the district court that the computation of those monies to which Hart would be entitled cannot be ministerially computed by the district court.[11] It is far from clear whether Hart's physical condition would have allowed him to continue in ONA's employ as a flight navigator. Hart suffered injuries to his back, knees and ankles as a result of the airplane accident, and complained of back pain during periods of prolonged sitting.[12] Nevertheless, Hart had been issued an FAA required medical certificate in September, 1970 which apparently indicated that he was physically fit to engage in work as a flight navigator. However, as the district court correctly noted, the referee failed to make a finding with respect to Hart's ability to perform his duties as a flight navigator and thus be entitled to his full wages. Resolution of this question as well as resolution of ONA's claim that Hart had voluntarily severed his employment in December, 1970[13] would obviously affect the amount of damages sought by Hart to "make [him] whole."

Similarly, while Hart claims that he is entitled to salary to December 2, 1973, it is not clear that he would have been retained in any capacity by ONA to that date. The district court's opinion referred to this aspect of Hart's employment as follows:

Another issue to be determined before damages may be awarded is whether plaintiff's employment would have been terminated in any event on or before May 1, 1971, when defendant, pursuant to an

---

11. *See, e. g. Hanson v. Chesapeake and Ohio Railway Company,* 412 F.2d 631, 633–34 (4th Cir. 1969). There the court held that the district court could enforce an award requiring that individuals be "compensated for any and all loss or adverse effect" where the district court merely had to identify the individuals to receive the award and translate the board's measure of damages into dollars and cents. The court recognized that if on remand, the district court found the award too indefinite to enforce, the court should remand to the board for clarification. 412 F.2d at 634.

12. Hart also experienced pain when standing and walking for some time after the crash. Hart received disability payments from the New York State Workmen's Compensation Board on the ground that his injuries prevented him from obtaining full employment. He re-ceived temporary total disability workmen's compensation benefits until August 10, 1970 and temporary partial benefits thereafter until February 9, 1973. No finding appears in the referee's Award as to the effect, if any, on damages due Hart by reason of these compensation benefits. ONA claims that by virtue of receiving these benefits Hart is estopped to assert his ability to engage in work as a flight navigator during that period. We express no opinion as to this contention, believing that it should properly be raised in and decided by arbitration.

13. It appears that at one point in the proceedings before the SBA, Hart filed a memorandum stating that he had exercised his right to sever his employment in December, 1970. The Award contains no finding in this respect.

agreement with Local 295, severed all of its navigators. We note that plaintiff claims continued employment and contends that he is entitled to recover wages until December 1, 1973. . . . Plaintiff does not seriously contest that all of the navigators of defendant were in fact terminated as of May 1, 1971, but instead appears to suggest that because of certain alleged demonstrated managerial skills of plaintiff, he would have been retained in a managerial position even after the navigators were severed and thus would have continued to be entitled to wages to December 1, 1973. (Footnote omitted.)

We find no discussion of this issue in the Award. A finding in this regard is crucial to Hart's proof of damages. On this record neither we nor the district court could determine whether Hart would have continued to serve as a flight navigator or would have been employed in some non-flight managerial capacity.[14]

Finally, a finding as to Hart's probable length of service (but for the wrongful discharge) would be required to ascertain any amount of severance pay to which Hart would be entitled under the collective bargaining agreement.

We thus cannot disagree with the district court that the award as to damages was fatally uncertain and therefore incapable of enforcement. If the district court on remand affirms the award as to ONA's liability (see discussion infra) then the damage portion of the award must be remanded to the referee for clarification and additional findings. United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); International Ass'n of Machinists v. Crown Cork & Seal Co., 300 F.2d 127 (3d Cir. 1962); Bell Aerospace Co. Div. of Textron v. Local 516, Int'l, Etc., 500 F.2d 921 (2d Cir. 1974); International Bro. of Elec. Wkrs., Loc. 369 v. Olin Corp., 471 F.2d 468 (6th Cir. 1972); Hanson v. Chesapeake and Ohio Railway Company, 412 F.2d 631 (4th Cir. 1969); Hanford Atomic Metal Trades Council v. General Electric Co., 353 F.2d 302 (9th Cir. 1965). Unless this procedure is followed, the district court would be preempting the fact finding functions which had been assigned by the parties to the referee, a preemption which is neither sound nor appropriate.[15]

---

14. In the event of severance of flight navigators, the collective bargaining agreement requires ONA to make reasonable efforts to place navigators in other positions commensurate with their skills and qualifications.

15. ONA has argued that since this is an action for enforcement under 45 U.S.C. § 153 First (p), the district court must either enforce the award or set it aside. Relying on Kirby v. Pennsylvania R. Co., 188 F.2d 793, 796–97 n. 11 (3d Cir. 1951), ONA argues that there is no power to remand to the SBA if the award is vague.

Kirby, however, was decided prior to the 1966 amendments to the Railway Labor Act. Those amendments added a remand power to statute which would permit the clarification of vague awards. 45 U.S.C. § 153 First (q). See Transportation Union v. U. P. R. Co., 385 U.S. 157, 165 n. 4, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).

However, there is a serious question as to whether the entire § 153 applies to the airline industry. In 1936 that section was specifically excluded from those sections of the Railway Labor Act made applicable to the airline indus-

try by 45 U.S.C. § 181. The first sentence of 45 U.S.C. § 181 states:

All of the provisions of Section 151 to 152 and 154 to 163 of this title are extended to and shall cover every carrier by air . . .

See International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) which discusses the reason for excluding application of § 153 to the airline industry.

International indicates, however, that the arbitration provisions of § 153 were nevertheless to be utilized by analogy in airline disputes in the same fashion as in railway controversies. Furthermore, the cases have found little distinction, if any, between the applicable principles affecting awards made under the National Railway Labor Act and awards of other arbitration panels. Bower v. Eastern Airlines, 214 F.2d 623 (3d Cir. 1954); Rossi v. Trans World Airlines, Inc., 507 F.2d 404 (9th Cir. 1974); Giordano v. Modern Air Transport/IBT Sys. Bd. of Ajust., 504 F.2d 882 (5th Cir. 1974). See also Northwest Airlines, Inc. v. Airline Pilots Ass'n Int'l, 373 F.2d 136 (8th Cir. 1967). Hence the power to remand exists under either the NRLA or the federal common law.

## IV.

As previously discussed, the district court's opinion included the statement that "the Award clearly and definitively states the discharge of plaintiff was without proper cause." It is not clear, however, whether by this statement the district court intended to affirm the referee's finding on liability in favor of Hart.

■ ONA has argued that the referee erred in his finding that Hart had been discharged without cause. However, the scope of review of an airline SBA award as with other arbitration awards is extremely limited. The district court will not review the merits of an award where the parties have agreed to submit their dispute to arbitration in which the award will be final and binding as is the case here. A labor arbitration award that is properly based on the applicable collective bargaining agreement and is thus within the boundaries of the arbitrator's jurisdiction is entitled to finality and is not subject to review on the merits. *Rossi v. Trans World Airlines, supra.*

As we have stated, we think that one could read the district court's opinion as affirming the referee's finding of liability against ONA. However, that opinion is silent as to the scope of review employed by the court in reaching its determination. Of particular concern to us is the fact that the district court specifically stated that it did not decide the issue of whether the Award was obtained in violation of the defendant's due process rights or as a result of improper conduct on the part of the referee. Both of these due process issues were urged by ONA.

*Bower v. Eastern Airlines, supra,* instructs that in such a circumstance the district court's review is not de novo (as ONA apparently urges) but is rather confined "to such inquiry as [is] necessary to determine whether the Board had given the parties a full and fair hearing and had exercised its honest judgment in reaching its conclusions and decisions on the full record." [16]

■ There being no indication in its opinion that the district court scrutinized the arbitration record to determine whether a "full and fair hearing" had been afforded, we think such an inquiry should be undertaken in accordance with the teachings of *Bower* and the issues resolved either on the present record or if the district court deems the record inadequate for that purpose, on such additional record as in its discretion it may require.[17]

If after such review the district court finds no bias on the part of the referee as would affect liability and that the proceedings before the referee were otherwise full and fair, there would seem to be no barrier to affirming the referee's liability finding and remanding only for the computation of damages.[18] In the event, however, that a

---

**16.** *See also Local 103 Intern'l Elec., R&M Wkrs. v. RCA Corp.,* 516 F.2d 1336 (3d Cir. 1975); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969); *Rossi v. Trans World Airlines, Inc., supra; Giordano v. Modern Air Transport/IBT,* 504 F.2d 882 (5th Cir. 1974); *Northwest Airlines, Inc. v. Airline Pilots Ass'n, Internat'l,* 373 F.2d 136 (8th Cir. 1967).

**17.** ONA apparently raises but two arguments requiring this inquiry, one having to do with the referee's refusal to admit certain hearsay testimony in violation of the parties agreement, and the other concerning the possibility of the referee's bias. It would appear to us that perhaps additional testimony might be required in connection with the latter claim. However, we do not restrict the district court in any fashion whatsoever with respect to its due process inquiry or the development of the record required.

**18.** On this record we cannot determine whether the original referee is still available to make any required findings as to the elements of damages, or whether, in light of his failure to supply a promised opinion which may have included such information, it would be appropriate to select another referee. The district court is in the best position to develop a record with respect to this aspect of the controversy.

defect in the proceedings or bias on the part of the referee is found by the district court, the district court should formulate an appropriate remedy to provide for the resolution of the parties' differences by arbitration, including, if necessary, a procedure whereby a new arbitrator is selected. *See e. g. Bell Aerospace Co. Div. of Textron v. Local 516 Int. U. Etc., supra* at 924–25.

### V.

Finally, Hart argues that we should reverse the judgment of the district court and order the entry of summary judgment in his favor. However, not only is such action inappropriate due to the unresolved issues to which we have referred and which must be resolved first by the district court (as to clarification and liability) and second by the referee or the board (as to damages), but the denial of a motion for summary judgment is not appealable.[19] *Boeing Co. v. International Union, U. A., A. & A. Imp. Wkrs.,* 370 F.2d 969 (3d Cir. 1967); *Bealmer v. Texaco, Incorporation,* 427 F.2d 885 (9th Cir.) *cert. denied* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

### VI.

Having concluded that the district court erred in granting summary judgment to ONA we will reverse and remand for proceedings consistent with this opinion.

---

19. Hart contends that the denial of summary judgment has been held to be appealable. He cites *Morgan Guaranty Trust Company of New York v. Martin,* 466 F.2d 593 (7th Cir. 1972) for this proposition. We are not persuaded by Hart's argument or the authority cited, particularly in the context of the instant case.