**PENNSYLVANIA NURSES ASSOCIATION, LOCAL 729, OPEIU/ AFL–CIO, Plaintiff,**

v.

**JOHN F. KENNEDY MEDICAL CENTER, f/k/a John F. Kennedy Memorial Hospital, Defendant.**

Civil Action No. 01–2276.

United States District Court, E.D. Pennsylvania.

March 5, 2003.

Anne E. Hendricks, Michael I. Levin and Associates, Huntingdon Valley, PA, for Plaintiff.

Samuel L. Spear, Spear, Wilderman, Borish, Endy, Spear and Runckel, Philadelphia, PA, for Defendant.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

Plaintiff, Pennsylvania Nurses Association, Local 729, OPEIU/AFL–CIO ("PNA"), filed a Complaint against defendant, John F. Kennedy Medical Center, f/k/a John F. Kennedy Memorial Hospital ("JFK"), on behalf of twenty-three former JFK nurses on May 9, 2001, seeking to enforce an arbitration award under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). In the Complaint, PNA contends that JFK refused to comply with an award requiring JFK, *inter alia*, to offer reinstatement and/or back pay to improperly discharged nurses and nurses whose hours of employment were reduced, all in violation of the Collective Bargaining Agreement ("CBA") between the parties.

Currently pending before the Court is Plaintiff's Motion for Summary Judgment. The motion presents two issues: (1) whether the back pay award extends to nurses who were not terminated but whose hours were reduced below full-time employment (which the CBA defines as 37.5 hours per week), and (2) whether the back pay award to the former JFK nurses should be reduced by the amount of money the nurses would have earned had they mitigated damages by making reasonable efforts to find other work after JFK limited or terminated their employment.

For the reasons stated in this Memorandum, the Court concludes that, first, the record presents a genuine issue of material fact as to whether the Award covers nurses who had their hours reduced below the CBA's definition of full-time employment, and, second, although the arbitrator was not required to consider mitigation of damages, the record presents a genuine issue of material fact as to whether that issue was presented to the arbitrator and not decided by him. The Court therefore grants in part and denies in part plaintiff's motion for summary judgment. The Court grants summary judgment on that part of the Award which does not involve calculation of damages. The Court denies summary judgment and remands the case to the arbitrator for decision on the two issues addressed in this Memorandum. The Court also denies plaintiff's request for attorney's fees and costs.

## II. *BACKGROUND*

The Court sets forth the relevant facts and procedural history with respect to the underlying Award. The facts are taken from the arbitrator's Decision and Award dated March 1, 2001.[1]

JFK, a medical institution in Philadelphia, is party to a CBA[2] with PNA, the labor organization representing a collective bargaining unit composed of all regular part-time and full-time graduate and registered nurses employed by JFK. *See* Pl.'s Ex. 2, at 2. The current CBA between the parties was effective from July 1, 1998 to June 30, 2001. *See id.* In Articles X and XXX of the CBA, JFK accepted certain restrictions on its ability to reduce its workforce, established a layoff procedure based on seniority, and committed to maintaining a minimum bargaining unit size. *See id.* The parties also agreed, in Article VII of the CBA, to an internal dispute-resolution mechanism for addressing grievances, and to submit to an arbitrator any grievance they could not resolve internally. *See* Pl.'s Ex. 1, at 6–8; Pl.'s Ex. 2, at 2. Because JFK had failed in the past to respond to grievances in a timely manner, Article VII of the CBA provided that " '[f]ailure to meet specified time limits shall cause the grievance to be ruled in favor of the other side.' " Pl.'s Ex. 1, at 7 § 8–9; *see also* Pl.'s Ex. 2, at 3.

Throughout 1999, JFK repeatedly violated the CBA through, *inter alia,* improper layoffs and demotions. *See* Pl.'s Ex. 2, at 3–8. In response to these violations, PNA presented multiple grievances to JFK. *See id.* PNA and JFK were unable to resolve sixteen of these grievances through the CBA's internal dispute mechanism. *See id.* Those grievances were presented to an arbitrator for decision at a hearing on September 6, 2000. *See id.* The grievances covered a litany of claims against JFK, including the reduction of the bargaining unit below fifty-one nurses, improper notice of layoffs, layoffs made in violation of the limitations imposed by the CBA, layoffs from units that had not been permanently closed, and the failure to afford nurses their reassignment rights under the CBA. *See id.*

On March 1, 2001, the arbitrator issued an Award sustaining all sixteen grievances. *See id.* at 13–18. The arbitrator found that JFK failed to respond to grievances in a timely manner in fourteen of the sixteen grievances, *see id.* at 13–14, leaving him no choice but to sustain the grievances pursuant to the CBA.[3] *See id.* at 14. Two grievances were sustained on the merits. The first of those grievances contested the reduction of PNA's bargaining unit below fifty-one full-time nurses.[4] *See id.* at 15. The arbitrator sustained this grievance on the ground that the CBA limited JFK's discretion to reduce the size of PNA's bargaining unit to three enumerated conditions, none of which had occurred. *See id.* at 16. The second grievance challenged JFK's assignment of nurses to the general nursing pool[5] when the Substance Abuse

---

1. A copy of the arbitrator's Decision and Award is set forth at Pl.'s Ex. 2.

2. A copy of the CBA is set forth at Pl.'s Ex. 1.

3. The CBA provides that grievances sustained because of JFK's failure to respond to them in a timely manner "shall be without prejudice nor shall they establish precedent." Pl.'s Ex. 1, at 7 § 8–9.

4. Article XXX of the CBA requires JFK to "employ a minimum of fifty-one (51) full-time equivalent full-time and regular part-time registered nurses (i.e., staff nurses) in the bargaining unit, at least forty-three (43) of which shall be full-time staff nurses." Pl.'s Ex. 1, at 44 § 30–1(d).

5. Article XXX of the CBA allows JFK to create a general nursing pool. Nurses assigned to the general nursing pool complimented JFK's

Unit was closed, instead of affording the nurses their right to be "bumped" into another unit as provided for in the CBA.[6] *See id.* The arbitrator sustained the latter grievance on the ground that since the Substance Abuse Unit had been permanently closed, the nurses working in that unit should have been afforded their "bumping" rights, instead of being assigned to the general nursing pool. *See id.* at 16–17.

After discussing the grievances, the arbitrator entered the following award against JFK:

On the basis of the record as a whole and for the reasons discussed, the grievances are sustained. The Hospital is directed to cease and desist the complained actions, including, but not limited to: making improper layoffs, using non-bargaining unit employees to perform bargaining unit work, not providing appropriate orientation to employees who are temporarily or permanently reassigned, not allowing more senior nurses to exercise their bumping rights, and the Hospital is directed to follow the procedures specified in the contractual grievance and arbitration provision.

The Hospital is directed to offer reinstatement to any nurse who was improperly laid off on or after July 1, 1998 if such nurse would be currently employed based on the contractual staffing provisions. The Hospital is directed to provide back pay to all improperly laid off and/or demoted nurses from the date of their layoff/demotion to the date of their reinstatement or to the date such employee would have been laid off or de-

moted if all contractual provisions had been followed, less unemployment compensation and interim earnings, not including earnings from employment the employee had prior to the date of layoff. For purposes of determining the proper date of layoff, the Hospital is directed, within thirty (30) days, of the date of this Award, to provide the Union with complete staffing reports for each six month period from July 1, 1998 through December 31, 2000 and to provide the date on which each department or unit closed and the reason for such closure. For purposes of this Award, the Emergency Room and the Medical/Surgical Unit are found to have closed on June 30, 2000.

The Hospital is directed to inform all eligible nurses by both certified letter, return receipt requested, and regular mail of their eligibility for reinstatement and/or back pay, the conditions of the Award, and the procedure to follow to make a claim. The affected nurses must respond in writing, postmarked within thirty (30) days of the date such notice is sent, to the Hospital and must provide the requested information to determine back pay and/or reinstatement eligibility.

*Id.* at 17–18. JFK did not appeal the Award, nor did it comply with any of the terms set forth in the Award. That lead to the filing of the instant action against JFK on May 9, 2001.

In the Complaint, plaintiff seeks relief on behalf of twenty-three nurses. By Order dated August 27, 2001, the Court ordered JFK to provide PNA with "all of the documents and other information to which reference is made in paragraphs 16(d) and (e) of the Complaint . . . ."[7] On September

---

regular nursing staff, and were not specifically assigned to a department. *See id.* at 44 § 30–1(a), (b).

**6.** Article X of the CBA provides nurses assigned to units of JFK that were permanently closed the right of "bump" into another unit

if the nurse "possesses the requisite skills and abilities to do the job with a reasonable amount of orientation." *Id.* at 12 § 10–6.

**7.** The documents and information referred to in paragraphs 16(d) and (e) of the Complaint is the same that the arbitrator required JFK to produce in the Award.

17, 2001, JFK sent letters to thirty-five nurses, notifying them of their rights under the Award. *See* Pl.'s Ex. 3 (reprinting signed copies of all thirty-five letters). Plaintiff seeks relief for sixteen of those thirty-five nurses.[8] These sixteen nurses are: Irmina Cisale, Linda Corbitt, Thresa Hesko, Theresia Joseph, Soo Kim, Cecilia Lawsin, Dana Miller, Mary Ann Ochotny–Yetter, Rachel Rodgers, Mariamma Samuel, Cecilia Santiago, Nelia Santillana, Rosamma Sunny, Leelamma Thampy, Patricia Weindorfer and Mariamma Zachariah. The remaining seven nurses for whom plaintiff seeks relief were not sent letters by JFK. These nurses were not laid off, but had their hours reduced below what the CBA defines as a full-time employment.[9] These seven nurses are: Pacita Capacio, Hariette Morganstein, Adele Mueller, Barbara Shivelhood, Barbara Tierney, Barbara Jean Tiller and Corazon Yust.

On September 19, 2001, JFK wrote to the arbitrator, requesting a clarification of the Award, noting that "a make-whole award typically contemplates that 'interim earnings' consists not only of actual earnings, but also pay the employees would have received had she [sic] mitigated her losses and made reasonable efforts to find other employment." Def.'s Ex. B. JFK asserted in the letter that the mitigation issue was argued at the hearing and therefore was "for the arbitrator to determine." *Id.* Accordingly, JFK requested the arbitrator to "advise the parties whether the 'interim earnings'" in the Award "encompasses money any of the grievants *would have* earned had they extended reasonable efforts to obtain other employment in mitigation of their losses." *Id.* (emphasis in original). In response, PNA wrote to the arbitrator on September 24, 2001, claiming that he lacked jurisdiction because JFK had not appealed his decision and jurisdiction rested exclusively with the Court. *See* Def.'s Ex. C. The arbitrator concluded that he was "without jurisdiction to clarify the award without a joint request to do so by the parties ...." Def.'s Ex. D.

Plaintiffs' motion for summary judgment followed.

## III. *STANDARD OF REVIEW*

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There-

---

8. In its Memorandum of Law, plaintiff states that the remaining nurses either resigned voluntarily, failed to respond to PNA and JFK's notice of their rights, or did not sustain any losses. *See* Pl.'s Mem. of Law, at 8.

9. According to Article XI of the CBA, "the normal work day shall consist of seven-and-one-half (7 1/2) consecutive hours not counting a lunch period of one-half (1/2) hour without pay and shall be free of and interrupted by any duties, except in an emergency.... Full time employees will normally work ten (10) working days in each pay period." Pl.'s Ex. 1, at 13 §§ 11–1 to –2. The pay period is bi-weekly. *See id.* at 20 § 12–11. These sections of the CBA, read together, indicate that the normal working week for a full-time nurse is 37.5 hours.

fore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fid. Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson* and *Celotex Corp.*).

In considering a motion for summary judgment, the evidence must be evaluated " 'in the light most favorable to the non-moving party.' " *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The party opposing summary judgment, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). On the other hand, if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

## IV. *DISCUSSION*

### A. ENFORCEMENT OF THE AWARD

 In this motion for summary judgment, PNA seeks to enforce the terms of the March 1, 2000 Award. " '[J]udicial review of a labor-arbitration pursuant to a collective bargaining agreement is very limited.' " *Nat'l Ass'n of Letter Carriers, AFL CIO v. U.S. Postal Serv.,* 272 F.3d 182, 185 (3d Cir.2001) (quoting *Major League Baseball Players Ass'n v. Garvey,*

532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (per curiam)). The Supreme Court has repeatedly held that "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). In short, "if the arbitration award draws its essence from the collective bargaining agreement, a court should uphold it." *Id.* (citing *United Parcel Serv. v. Int'l Bhd. of Teamsters,* 55 F.3d 138, 141 (3d Cir.1995)). An award "fails to draw its essence from the collective bargaining agreement if the arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination." *United Indus. Workers, Service, Transp., Professional Government of North America of Seafarers' ex rel. Bouton v. Gov't of the Virgin Islands,* 987 F.2d 162, 170 (3d Cir. 1993) (citing *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of America,* 896 F.2d 745, 748–49 (3d Cir. 1990)).

PNA contends that the Award draws its essence from the CBA. JFK does not mention this issue in its motion papers. The Court agrees with PNA and concludes that the Award draws its essence from the CBA.

The arbitrator upheld fourteen of the sixteen grievances because JFK failed to timely respond to those claims as required by the grievance and arbitration procedures in Article VIII of the CBA. *See id.* at 14. The arbitrator upheld one grievance on the merits because he found that JFK had improperly laid off employees, in violation of the CBA. *See id.* at 15–16. The arbitrator upheld a second grievance

on the merits because he found that JFK had placed nurses whose units had closed in the nursing pool without allowing them to exercise their bumping rights, in violation of the CBA. *See id.* at 16–17.

In the Award the arbitrator determined that JFK had made improper layoffs or had engaged in other conduct that violated the CBA, and directed JFK to cease and desist from those violations. *See* Pl.'s Ex. 2, at 17–18. There can be no doubt that the Award draws its essence from the CBA.

## B. REMAND TO THE ARBITRATOR

■ JFK challenges plaintiff's summary judgment motion on the ground that the relief PNA seeks in this enforcement action is not provided for in the Award. Accordingly, JFK seeks a remand to the arbitrator. "The arbitrator's award is not, as a rule, open to remand." *Teamsters Union Local No. 115 v. DeSoto, Inc.,* 725 F.2d 931, 940 (3d Cir.1984). Once an issue has been submitted to an arbitrator for decision and that decision is rendered, " 'his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration.' " *Id.* (quoting *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir. 1982) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 (3d Cir. 1967))).

The Third Circuit has recognized three exceptions to the general rule against remand:

(1) an arbitrator "can correct a mistake which is apparent on the face of his award," 378 F.2d at 573; *see also McClatchy,* 686 F.2d at 734 n. 1; (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open

for him for subsequent determination," 378 F.2d at 573 and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." *Id.*

*Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327, 332 (3d Cir.1991) (quoting *La Vale Plaza* ); *see also Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 991–94 (3d Cir.1997).

In seeking a remand, JFK relies upon the second and third exceptions. First, JFK argues that none of the grievances presented to the arbitrator addressed the question whether a reduction of hours constitutes a layoff under the CBA and noted that there is no provision of the CBA which equates a reduction of hours to a layoff. Therefore, according to JFK, since the Award is ambiguous on whether it extends to nurses who had their hours reduced, the case should be remanded to the arbitrator for a decision on that issue. Second, JFK asserts that the issue whether the back pay awards to the former JFK nurses should be reduced by the amount that the nurses would have earned had they made reasonable efforts to mitigate their losses was presented to the arbitrator at the hearing and was not mentioned in the Award. Thus, JFK argues that the Award should be remanded to the arbitrator so that he can rule on that issue.

### 1. *Whether the Award Covers Nurses Who Had Their Hours Reduced Below the CBA's Definition of Full–Time Employment*

■ In urging the Court to remand the Award to the arbitrator to consider whether the Award covers nurses who had their hours reduced below the CBA's definition of full-time employment, JFK principally relies on *United Mine Workers of America*

*Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806 (3d Cir.1981) and *Transport Workers Union of Philadelphia, AFL–CIO, Local No. 234 v. Philadelphia Transportation Co.*, 228 F.Supp. 423 (E.D.Pa. 1964).

In *Consolidation Coal,* the plaintiff union sought to prevent Consolidation Coal from subcontracting out certain repair work in violation of the CBA. *Consolidation Coal,* 666 F.2d at 808. Consolidation Coal and the union settled this grievance before it was submitted to arbitration. *Id.* The settlement agreement simply provided that management would not violate enumerated sections of the CBA. *Id.* When Consolidation Coal later engaged in similar violations of the CBA, the union brought suit in federal court to enforce the settlement agreement. *Id.* at 808–09. The district court enjoined Consolidation Coal from violating the sections of the CBA that were the subject of the written settlement agreement. *Id.* at 809. The Third Circuit reversed the district court on the ground that the settlement agreement could not be enforced because it was not sufficiently specific. *Id.* at 810. Although the agreement was "broadly worded" and its language suggested "prospective application," the Third Circuit noted that there was "contradictory evidence as to whether the ambiguous agreement was meant to apply to the current dispute." *Id.* The Third Circuit held that

> [f]ederal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution and when enforcement of an arbitration award or settlement agreement is sought under Section 301 [of the Labor Management Relations Act, 29 U.S.C. § 185(a) ], the court must be able to say "with positive assurance" that the award or settlement was intended to cover the dispute. *If the court has any doubt [over whether an issue was properly presented to the arbitrator for deci-*

> *sion], the parties should be returned to their grievance procedure and arbitration . . . .*

*Id.* at 811 (footnote and citations omitted) (emphasis added).

In *Transport Workers Union,* the union sought enforcement of an award that prevented the union's members from being forced to work on certain vehicles owned by defendant. *Transport Workers Union,* 228 F.Supp. at 424. The award did not, however, identify those vehicles. *Id.* The district court remanded the case to the arbitrator because the award had "generated a collateral dispute concerning the meaning of its essential terms" and "[i]t is not within the province of this Court to intrude into the arbitration procedure and interpose its interpretation of a disputed award on the parties to a collective bargaining agreement." *Id.* at 425.

PNA responds that these cases are unpersuasive because the Award at issue in this enforcement action clearly contemplated that damages be awarded for nurses whose hours were reduced. In advancing this argument, PNA relies on the declaration of Adele Mueller, the former head nurse at JFK and one of the nurses who had their hours reduced below what the CBA defines as full-time employment. Ms. Mueller states in her declaration that, as PNA's president from July 1, 1998 through June 30, 2001, she was intimately involved in negotiating the CBA, and that "[d]uring the negotiations of the [CBA], 'layoffs' were discussed both in terms of positions and hours." Pl.'s Ex. 32 ¶¶ 4, 5. She further states that the parties "discussed and contemplated" complete layoffs and the reduction of hours together. *Id.* ¶ 6. Finally, she states that both PNA and JFK intended "[t]he provisions in the [CBA] dealing with layoffs ... to protect those completely laid off and those whose hours were reduced." *Id.* ¶ 7. In addition,

PNA argues that a number of grievances presented to the arbitrator involved layoffs, and the arbitrator, in the Award, intended to remedy any layoff in violation of the CBA, not simply the specific cases presented to him. Therefore, according to PNA, since the Award covers *improper* layoffs, and since the parties discussed the reduction of hours and layoffs together during the negotiations over the CBA, the Award covers nurses who had their hours reduced.

PNA correctly argues that the Award covers improper layoffs. Four of the sixteen grievances submitted to the arbitrator for decision specifically addressed the issue of improper layoffs. *See* Pl.'s Ex. 2, at 3–8, 13–18. All of these grievances were sustained due to JFK's failure to respond in a timely manner. *See id.* at 13–14. A fifth grievance, sustained on the merits, addressed the reduction of PNA's bargaining unit below fifty-one nurses, in violation of the CBA. The Award also directs JFK to cease and desist from, *inter alia,* "making improper layoffs", and "to provide back pay to all improperly laid off and/or demoted nurses from the date of their layoff/demotion to the date of their reinstatement or to the date such employee would have been laid off or demoted if all contractual provisions had been followed ..." *Id.* at 18.

However, the Court cannot conclude "with positive assurance" that the Award also covers nurses who had their hours reduced. In sustaining the bargaining unit grievance, one of two sustained on the merits,[10] the arbitrator primarily relied on the uncontradicted testimony of Adele Mueller, the former Head Nurse at JFK, that the provision covering the size of the bargaining unit was included in the CBA because, during negotiations, PNA was "very concerned about maintaining the *size* of the bargaining unit ...." Pl.'s Ex. 2, at 15 (emphasis added). The arbitrator's decision on this grievance does not mention any testimony by Ms. Mueller concerning the reduction of hours, nor is that topic mentioned at all in the decision. Moreover, the provisions of the CBA relied upon by the arbitrator identify the conditions under which JFK was permitted to reduce the size of the bargaining unit through layoffs; those provisions do not mention a reduction of hours. *See id.* at 16.

In short, PNA has provided evidence that layoffs and the reduction of hours were discussed together during negotiations over the CBA; it has not, however, presented evidence that this fact was presented to the arbitrator at the hearing. On the other hand, JFK has offered a declaration from Samuel L. Spear, Esq., JFK's legal counsel before the arbitrator and in this litigation. In this declaration, Mr. Spear states that "[t]he issue of the

---

10. Under the CBA, the fourteen grievances sustained because of JFK's failure to respond "shall be without prejudice nor shall they establish precedent." Pl's Ex. 1, at 7 § 8–9. Therefore, they are only binding on JFK with respect to the nurses who brought them. Grievances sustained on the merits, however, are "final and binding upon both parties." *Id.* at 7 § 8–6. "A clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principal similar to that of *res judicata,* and to bar reconsideration of the disputes fully decided on the merits." *Local 616, Int'l Union of* *Elec., Radio and Mach. Workers, AFL–CIO v. Byrd Plastics, Inc.,* 428 F.2d 23, 26 (3d Cir. 1970). Of the two grievances sustained on the merits, only the grievance contesting the reduction of the bargaining unit below fifty-one nurses is relevant to the instant dispute. The other grievance sustained on the merits dealt with JFK's assignment of nurses to the general nursing pool instead of affording them their reassignment rights under the CBA, and that has no bearing on the question whether the reduction of hours below the CBA's definition of full-time employment constitutes a layoff.

reduction of hours of any nurses at JFK was not submitted to the arbitrator, nor was there any evidence regarding that issue submitted to the arbitrator." Decl. of Samuel L. Spear ¶ 3.

■ The CBA also is bereft of any language explicitly stating that a reduction of hours constitutes a layoff. PNA cites to several provisions of the CBA which, read together, indicate that a "normal" work week for a full-time nurse is 37.5; none of these provisions state that a reduction of hours below 37.5 constitutes a layoff. A number of other provisions in the CBA, not mentioned by PNA, discuss hours and layoffs. Article X, entitled "Layoff and Recall," sets forth the procedure to be followed, and the rights accorded to affected nurses, when JFK determines a reduction in force is necessary. Article XI, entitled "Hours of Work," covers the normal work schedule for full-time and part-time employees, and the procedure to be followed in canceling and/or rescheduling shifts. Section 24–2 permits JFK to "determine or change the starting and quitting time and number of hours to be worked" and to "determine the number of shifts," unless otherwise provided for elsewhere in the CBA. Article XXX contains provisions regarding minimum bargaining unit size. Nowhere do these sections state that a reduction of hours constitutes a layoff. In order for the Court to conclude that a reduction in hours constitutes a layoff under the CBA, it would have to interpret these sections of the CBA. That is not a proper function for the Court in a proceeding to enforce an award. *See United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business

overruling him because their interpretation of the contract is different from his.").

The Court concludes on the present record that there exists a genuine issue of material fact as to whether the arbitrator intended the Award to cover nurses who had their hours reduced. In this enforcement action, the Court cannot conclude "with positive assurance" that the Award was intended to cover this category of nurses. It is the function of the arbitrator to decide whether the grievances covering layoffs were meant to cover nurses who had their hours reduced. *See Consolidation Coal*, 666 F.2d at 811 ("[I]t is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding." (citations omitted)).

The Court therefore denies summary judgment on this issue and remands the case to the arbitrator to address the question whether the back pay award extends to nurses who were not terminated but whose hours were reduced below full-time employment.

2. ***Whether Back Pay Awards to the Former JFK Nurses Should be Reduced by the Amount of Money the Nurses Would Have Earned Had They Mitigated Damages by Making Reasonable Efforts to Find Other Work After JFK Limited or Terminated Their Employment***

a. **The Arbitrator Did Not Have a Duty to Consider Mitigation Efforts by the Nurses**

■ In urging the Court to remand the Award on the issue of mitigation, JFK argues that the arbitrator should have considered efforts by the nurses to take advantage of reasonable employment opportunities because "[a] duty to mitigate is generally found to be an implied element of back pay entitlement in labor arbitra-

tion cases." In support of this position, JFK cites three awards and *Elkouri & Elkouri: How Arbitration Works,* for the proposition that "[m]any arbitrators believe that an employee who has been wronged by an employer has an affirmative duty to mitigate, so far as reasonable, the amount of the loss." Marlin M. Volz & Edward P. Goggin, *Elkouri & Elkouri: How Arbitration Works* 593 (5th ed.1997) (footnote omitted).

However, JFK cites no authority for the proposition that arbitrators must always consider mitigation in awarding back pay. Even Elkouri & Elkouri acknowledges that "this view [requiring mitigation] has not always been accepted, as where an arbitrator stated that while it may be proper to deduct from a back pay award sums actually earned by an employee before reinstatement, or sums received indirectly from his employer, as through unemployment compensation, no authority exists in an Arbitrator to penalize an employee financially for failing to have earnings." Volz & Goggin, *Elkouri & Elkouri, supra,* at 594 (footnote omitted).

This issue was examined in *Tenet Healthsystem MCP, L.L.C. v. Pennsylvania Nurses Association, Local 712,* Civ. A. No. 01–2201, 2002 WL 4637 (E.D.Pa. Dec.20, 2001). In *Tenet,* the plaintiff union, the plaintiff in this case, filed suit to enforce an award against the defendant Hospital. Tenet argued that the award should be vacated on a number of grounds, including, *inter alia,* the arbitrator's decision not to consider mitigation efforts in calculating back pay. In refusing to vacate the award, Judge Padova wrote that "[t]he proposition that arbitrators must always reduce awards of back pay when the grievant fails to mitigate damages by finding new employment is not supported by well defined, explicit, and clearly applicable governing law." *Tenet,* 2002 WL 4637, at *4 (internal quotation marks omitted).

In so ruling, Judge Padova relied upon *Teamsters, Chauffeurs, Salesdrivers & Helpers, Local Union No. 330 v. Eby-Brown Co.,* 670 F.Supp. 1393 (N.D.Ill. 1987). In *Eby–Brown,* the plaintiff union sought to enforce an award that was completely silent on the issue of mitigation. *Id.* at 1396. The Court in that case noted:

> Nor is there any case law which indicates that an arbitrator must always consider mitigation of damages in determining back pay. Nor have we been able to locate any case holding that as a matter of law every arbitrator must take into account the grievant's duty to mitigate damages.... It may even be a good idea that an arbitrator should consider an employee's duty to mitigate, but failure to do so, specifically when not requested to do so, is not grounds to vacate an arbitrator's award or to decline enforcement.

*Id.* at 1397.

The Court finds *Tenet* and *Eby–Brown* persuasive. An arbitrator's award which is silent on the issue of mitigation does not require the court to vacate the award or remand the case to the arbitrator. An arbitrator may, but need not, require mitigation of damages.

**b. A Genuine Issue of Material Fact Exists As To Whether the Issue of Mitigation Was Presented to the Arbitrator at the September 6, 2000 Hearing**

██ In the alternative, JFK seeks a remand on the ground that the Award contains a "latent ambiguity" regarding whether the arbitrator addressed the issue of whether any of the grievants had exerted reasonable efforts to find other work after JFK limited or terminated their employment. JFK asserts that the issue was among those presented to the arbitrator

for decision, and it is not mentioned in the Award.

JFK principally relies on the Third Circuit's opinions in *Official & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital,* 186 F.3d 326 (3d Cir.1999) and *Hart v. Overseas National Airways, Inc.,* 541 F.2d 386 (3d Cir.1976). In *Brownsville,* the grievant, who had been laid off because of accusations of sexual harassment, obtained an award directing the defendant hospital to reinstate him. *Brownsville,* 186 F.3d at 328–29. His reinstatement, however, was conditioned on the successful completion of a course of counseling prescribed by the doctor who had been treating him. *Id.* at 329. The doctor subsequently refused to treat the grievant, and the hospital refused to reinstate him, even after he had successfully completed counseling with another doctor. *Id.* The hospital argued that the award was not ambiguous, because the grievant could not complete his course of counseling by the doctor specified in the award, and thus could not be reinstated. The Third Circuit disagreed, noting that an " 'extraneous' ... fact renders the remedy ordered unenforceable in the absence of clarification" and remanded the award to the arbitrator. *Id.* at 333.

In *Hart,* the grievant, a pilot, was discharged after the airplane he piloted crashed in a storm. He successfully obtained an award requiring reinstatement and payment of the money that would have been owed to him had he not been wrongfully discharged. *Hart,* 541 F.2d at 388. Hart brought an enforcement action in federal court and computed the damages he claimed were owed to him as if he were entitled to draw full salary. *Id.* The Third Circuit found ambiguity in the award and held that "[t]he computation of those monies to which Hart would be entitled cannot be ministerially computed by the district court." *Id.* at 391. The Court

observed that Hart had been severely injured in the crash, and had suffered a number of injuries, which raised questions regarding whether he would be able to continue to perform his duties as a pilot. *Id.* Accordingly, the Court concluded that, in issuing the damage award, the arbitrator failed to make a finding with respect to Hart's ability to perform his duties as a pilot and thus be entitled to full wages. *Id.*

Both *Brownsville* and *Hart* involved situations where an unanticipated event created an ambiguity in the award that rendered it incapable of enforcement without further clarification. That is not the issue presented in this case. In the instant action, the parties' disagreement is over whether the issue of mitigation was presented at the hearing. In support of its contention that the issue of mitigation was presented to the arbitrator, JFK relies on a letter, dated September 19, 2001, from Mr. Spear to the arbitrator. *See* Def.'s Ex. B. In the letter, Mr. Spear states that the issue of mitigation was argued at the hearing and therefore was "for the arbitrator to determine." *Id.* JFK also offers a declaration from Mr. Spear, in which Mr. Spear states that "[a]t the hearing ... there was some general discussion of the issue of an employee's obligation to seek other employment to mitigate his or her losses where [PNA] asserts that the grievant is entitled to back pay from [JFK]." Decl. of Samuel L. Spear ¶ 1. In response, PNA argues that general discussion of an issue does not mean that it was presented to the arbitrator for decision, and that JFK has waived the issue of mitigation because it failed to raise it at the hearing or in an appeal of the Award. PNA, however, has offered no evidence that the issue of mitigation was not presented to the arbitrator.

The present record presents a genuine issue of material fact as to whether the issue of mitigation was presented to the arbitrator. The Award provides only that unemployment compensation and interim earnings are to be deducted from back pay. The Award makes no mention of mitigation. If the issue was presented at the hearing, "the arbitrator has not exhausted his function" with respect to the mitigation issue "and it remains open to him for subsequent determination ...." *Colonial Penn*, 943 F.2d at 332 (quoting *La Vale Plaza*, 378 F.2d at 573). If the issue was not presented at the hearing, the arbitrator, not this Court, must make that determination. *See Shaffer v. Mitchell Transp., Inc.*, 635 F.2d 261, 265 n. 6 (citing *Local 103 of the Int'l Union of Elec., Radio & Mach. Workers, AFL–CIO v. RCA Corp.*, 516 F.2d 1336, 1340–41 (3d Cir. 1975)). The fact that some nurses might have mitigated their damages is irrelevant at this stage of the proceedings because the Court cannot determine whether all nurses covered by the Award mitigated damages in the same manner as if the arbitrator had directed mitigation in the Award.

In light of the Court's conclusion that there exists a genuine issue of material fact whether the mitigation question was presented to the arbitrator at the hearing, PNA's arguments that JFK has waived the mitigation issue fails. The cases PNA cites on this issue all involve cases where the record clearly demonstrated that the party attempting to raise the issue of mitigation in enforcement proceedings had not raised it before the arbitrator. Both in *Eby–Brown*, 670 F.Supp. at 1398 and in *United Food & Commercial Workers, Local 400 v. Marval Poultry Co.*, 645 F.Supp. 1174, 1180 (W.D.Va.1986), the companies admitted that they did not raise the issue of mitigation before the arbitrator. In *Encino Shirt Co. v. International Ladies' Garment Workers' Union*, 108 L.R.R.M.

(BNA) 2723, 2724, 1980 WL 2124 (N.D.Ala. 1980), the company argued that there was no proof in the record that it did not present the issue of mitigation to the arbitrator, but presented no affidavit attesting to this fact. The district court found such arguments patently without merit.

PNA also argues that JFK waived the right to raise the mitigation issue in this Court because it did not appeal the arbitrator's Award. The Court rejects that argument for the reasons set forth in this part of the Memorandum and for the additional reason that the CBA does not provide any right of appeal. To the contrary, the CBA provides that "[t]he [arbitrator's] findings shall be final and binding upon both parties." Pl.'s Ex. 1, at 50. Because the CBA does not provide a right to appeal the decision of the arbitrator, there can be no waiver for failing to appeal.

The Court therefore denies summary judgment on this issue and remands the case to the arbitrator for clarification as to whether he considered the issue of mitigation in the Award and, if so, whether the nurses were required to mitigate their damages.

## C. PNA'S REQUEST FOR ATTORNEY'S FEES AND COSTS

In the motion, PNA has included a request for attorney's fees to reimburse it for the costs of pursuing this action. In suits seeking to require one party to abide by an award, "fees are generally awarded if the defaulting party acted without justification ... or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Chauffeurs, Teamsters & Helpers Local Union 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir.1980) (citations omitted).

Because the Court decided to remand two issues to the arbitrator for further proceedings, the Court concludes that

JFK's refusal to comply with the Award with respect to those issues was reasonable. Therefore, PNA's request for attorney's fees and costs is denied.

## V. *CONCLUSION*

For the foregoing reasons, the Court grants in part and denies in part PNA's Motion for Summary Judgment. The Court denies summary judgment on the two issues addressed in the foregoing Memorandum and remands the case to the arbitrator for decision on those issues. The Court grants summary judgment with respect to the remainder of the Award. The Court also denies PNA's request for attorney's fees and costs.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 5th day of March, 2003, upon consideration of Plaintiff's Motion for Summary Judgment (Document No. 10, filed February 15, 2002), Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Document No. 14, filed March 14, 2002), Plaintiff's Reply Memorandum of Law in Support of Motion for Summary Judgment (Document No. 16, filed April 3, 2002), and the supplemental filings of the parties, for the reasons stated in the attached Memorandum, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff's Motion for Summary Judgment is **DENIED** as to plaintiff's claim seeking enforcement of that part of the Award directing defendant, John F. Kennedy Medical Center, f/k/a John F. Kennedy Memorial Hospital, to "provide back pay to all improperly laid off and/or demoted nurses from the date of their layoff/demotion to the date of their reinstatement or to the date such employee would have been laid off or demoted if all contractual provisions had been followed, less unemployment compensation and interim earnings, not including earnings from employment the employee had prior to the date of layoff."

2. Plaintiff's Motion for Summary Judgment is **GRANTED** in all other respects.

**IT IS FURTHER ORDERED** that the case shall be **REMANDED** to the arbitrator to determine two issues: (1) whether the Award applies to nurses who were not terminated but whose hours were reduced below full-time employment, and (2) whether he considered the issue of mitigation in the Award and, if so, whether the nurses were required to mitigate their damages.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees and costs is **DENIED.**

The Court having decided all of the issues in the case, **IT IS FURTHER ORDERED** that the Clerk of Court shall **CLOSE** the case for statistical purposes.